## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| EDUARDO ANTONIO JIMENEZ DEL ROSARIO, JAYSON MERCADO, and TANEISHA LEWIS, on behalf of themselves and all others similarly situated,<br><br>       Plaintiffs,<br><br>v.<br><br>BALDOR SPECIALTY FOODS, INC.,<br><br>       Defendant. | Case No. 1:23-cv-03580<br><br>Judge Alvin K. Hellerstein |

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

# TABLE OF CONTENTS

I.    INTRODUCTION .................................................................................................. 1

II.    STATEMENT OF ALLEGED FACTS ................................................................. 3

    a.    Baldor's Business......................................................................................... 3

    b.    The Data Incident ........................................................................................ 4

    c.    Procedural History ....................................................................................... 4

    d.    Settlement Terms.......................................................................................... 5

        i.    The Settlement Class......................................................................... 5

        ii.    Settlement Benefits .......................................................................... 6

        iii.    Notice to Settlement Class Members.............................................. 9

        iv.    Claims, Objections, Opt-Outs, and Termination............................ 9

        v.    Release ..............................................................................................11

III.    LEGAL STANDARD ..........................................................................................11

IV.    ARGUMENT ...................................................................................................... 12

    a.    The Settlement Satisfies the Criteria for Preliminary Approval ................ 13

        i.    The Settlement Warrants Preliminary Approval Under Rule 23(e). ............. 14

        ii.    *Grinnell* Factors ............................................................................ 21

    b.    Preliminary Certification of the Settlement Class is Appropriate.................... 24

        i.    The Settlement Class satisfies the requirements of Rule 23(a).................. 25

        ii.    The Settlement Class satisfies the requirements of Rule 23(b). ................ 28

    c.    The Court Should Approve the Proposed Notice Program ............................... 30

    d.    The Court Should Appoint the Settlement Administrator................................. 32

    e.    The Court Should Appoint the Class Representatives ...................................... 32

    f.    The Court Should Appoint Settlement Class Counsel ..................................... 33

V.    CONCLUSION.................................................................................................... 33

## TABLE OF AUTHORITIES

**Cases**

*Achtman v. Kirby, McInerney & Squire, LLP*,
    464 F.3d 328 (2d Cir. 2006) ................................................................................. 32

*Alcantara v. CNA Mgmt., Inc.*,
    264 F.R.D. 61 (S.D.N.Y. Dec. 8, 2009) .................................................................. 25

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997) ................................................................................. 24, 28, 30

*Baksh et al. v. IvyRehab Network, Inc.*,
    No. 7:20-CV-01845 (S.D.N.Y.) ............................................................................. 18

*Beckman v. KeyBank, N.A.*,
    293 F.R.D. 467 (S.D.N.Y. 2013) .......................................................................... 20

*Bolanos v. Norwegian Cruise Lines Ltd.*,
    212 F.R.D. 144 (S.D.N.Y. Nov. 26, 2002) ....................................................... 27, 28

*Bourlas v. Davis Law Assocs.*,
    237 F.R.D. 345 (E.D.N.Y. Aug. 30, 2006) ........................................................... 14

*Castagna v. Madison Square Garden, L.P.*,
    No. 09-cv- 10211 (LTS)(HP), 2011 U.S. Dist. LEXIS 64218, 2011 WL 2208614 (S.D.N.Y.
    June 7, 2011) ................................................................................................... 15, 22

*Charron v. Pinnacle Group N.Y. LLC*,
    874 F. Supp. 2d 179 (S.D.N.Y. 2012) ................................................................... 31

*City of Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974) ................................................................ i, 14, 18, 21, 24

*Cohen v. J.P. Morgan Chase & Co.*,
    262 F.R.D. 153 (E.D.N.Y 2009) ...................................................... 11, 14, 25, 29

*Consol. Rail Corp. v. Town of Hyde Park*,
    47 F.3d 473 (2d Cir. 1995) ................................................................................... 25

*D'Amato v. Deutsche Bank*,
    236 F.3d 78 (2d Cir. 2007) ............................................................................... 15, 16

*Denney v. Jenkens & Gilchrist*,
    230 F.R.D. 317 (S.D.N.Y. 2005), *aff'd in part and vacated in part*, 443 F.3d 253 (2d Cir. 2006)
    ............................................................................................................... 11, 24

*Dornberger v. Metropolitan Life Ins. Co.*,
    203 F.R.D. 118 (S.D.N.Y. 2001) ............................................................ 20

*Fox v. Cheminova*,
    213 F.R.D. 113 (E.D.N.Y. Feb. 28, 2003) .............................................. 29

*Frank v. Eastman Kodak Co.*,
    228 F.R.D. 174 (W.D.N.Y. 2005) ...................................................... 22, 23

*Freeland v. AT & T Corp.*,
    238 F.R.D. 130 (S.D.N.Y. Aug. 17, 2006) ............................................. 26

*Hammond v. The Bank of N.Y. Mellon Corp.*, *No. 08 Civ. 6060 (RMB)(RLE)*,
    2010 WL 2643307 (S.D.N.Y. June 25, 2010) ........................................ 19

*Hapka v. CareCentrix, Inc.*,
    Case No. 2:16-cv-02372, 2018 WL 1871449 (D. Kan. Feb. 15, 2018) ................... 29

*Hart v. BHH, LLC*,
    No. 15cv4804, 2020 U.S. Dist. LEXIS 173634 (S.D.N.Y. Sep. 22, 2020) ............ 20

*Iglesias-Mendoza v. La Belle Farm, Inc.*,
    239 F.R.D. 363 (S.D.N.Y. Jan. 29, 2007) .............................................. 25

*In re "Agent Orange" Prod. Liab. Litig.*,
    818 F.2d 145 (2d Cir. 1987) .................................................................. 29

*In re Anthem, Inc. Data Breach Litig.*,
    327 F.R.D. 299 (N.D. Cal. Aug. 15, 2018) ............................................. 29

*In re Austrian & German Bank Holocaust Litig.*,
    80 F. Supp. 2d 164 (S.D.N.Y. 2000) ................................................. 16, 23

*In re Brinker Data Incident Litig.*,
    No. 3:18-CV-686-TJC-MCR, 2021 WL 1405508 (M.D. Fla. Apr. 14, 2021) ......... 25

*In re Equifax, Inc. Customer Data Security Breach Litig.*,
    MDL Docket No. 2800, No. 1:17-md-2800-TWT, 2020 WL 256132 (N.D. Ga. Mar. 17, 2020),
    *rev'd on other grounds*, 999 F.3d 1247 (11th Cir. 2021) ........................... 25

*In re Flag Telecom Holdings, Ltd. Securities Litig.*,
    574 F.3d 29 (2d Cir. 2009) .................................................................. 27

*In re GSE Bonds Antitrust Litig.*,
    414 F. Supp. 3d 686 (S.D.N.Y. 2019) .................................................. 16

*In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*,
    293 F.R.D. 21 (D. Me. 2013) ............................................................... 19

*In re Heartland Payment Systems, Inc. Customer Data Sec. Breach Litig.*,
   851 F. Supp. 2d 1040 (S.D. Tex. 2012)................................................................ 25, 30

*In re Hudson's Bay Co. Data Security Incident Consumer Litig.*,
   No. 18-cv-8472 (S.D.N.Y.) ................................................................................... 25

*In re Initial Pub. Offering Sec. Litig.*,
   260 F.R.D. 81 (S.D.N.Y. June 10, 2009)............................................................... 14

*In re Interpublic Sec. Litig.*,
   No. 02 Civ. 6527, 2004 WL 2397190 (S.D.N.Y. Oct. 26, 2004) ............................ 22

*In re Ira Haupt & Co.*,
   304 F. Supp. 917 (S.D.N.Y. 1969) ......................................................................... 22

*In re Luxottica Group S.p.A. Sec. Litig.* (*In re Luxottica Group Litig.*),
   233 F.R.D. 306 (E.D.N.Y. 2006)............................................................................ 12

*In re Marriott Int'l, Inc., Cust. Data Sec. Breach Litig.*,
   No. 19-MD-2879, 341 F.R.D. 128 (D. Md. 2022).................................................. 25

*In re Nasdaq Antitrust Litig.*,
   176 F.R.D. 99 (S.D.N.Y. 1997) ........................................................................ 12, 14

*In re Nissan Motor Corp. Antitrust Litig.*,
   552 F.2d 1088 (5th Cir. 1977) ............................................................................... 32

*In re Painewebber Ltd. P'ships Litig.*,
   171 F.R.D. 104 (S.D.N.Y. 1997)............................................................................ 22

*In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*,
   330 F.R.D. 11 (E.D. N.Y. Jan. 28, 2019)............................................................... 13

*In re Target Corp. Customer Data Security Breach Litig.*,
   309 F.R.D. 482 (D. Minn. 2015)............................................................................ 25

*In re TD Ameritrade Acct. Holder Litig.*,
   No. C 07-2852 SBA, 2011 WL 4079226 (N.D. Cal. Sept. 13, 2011) ...................... 19

*In re Telik*, 576 F. Supp.
   2d 570 (S.D.N.Y. 2008) ......................................................................................... 20

*In re The Home Depot, Inc., Customer Data Sec. Breach Litig.*,
   Case No. 1:14-md-02583-TWT, 2016 WL 6902351 ((N.D. Ga. Aug. 23, 2016) .................... 29

*In re TJX Cos. Retail Sec. Breach Litig.*,
   246 F.R.D. 389 (D. Mass. 2007) ............................................................................ 19

*Jackson v. Bloomberg, L.P.*,
   298 F.R.D. 152 (S.D.N.Y. Mar. 19, 2014)............................................................ 26

*Johnson v. Rausch, Sturm, Israel, Enerson & Hornik, LLP*,
   333 F.R.D. 314 (S.D.N.Y. 2019) ....................................................................... 21

*Jones v. Amalgamated Warbasse Houses, Inc.*,
   97 F.R.D. 355 (S.D.N.Y. 1982) ........................................................................ 15

*Lizondro-Garcia v. Kefi LLC*,
   300 F.R.D. 169 (S.D.N.Y. May 29, 2014).......................................................... 24, 26

*Marisol A. v. Giuliani*,
   126 F.3d 372 (2d Cir.1997) ................................................................... 25, 26, 27, 28

*McFarlane v. Altice USA, Inc.*,
   No. 20-cv-1297 (S.D.N.Y.) ................................................................................ 25

*Mullane v. Cent. Hanover Bank & Trust Co.*,
   339 U.S. 306 (1950)......................................................................................... 31

*Ortiz v. Fibreboard Corp.*,
   527 U.S. 815 (1999)......................................................................................... 16

*Rutledge et al v. Saint Francis Healthcare System*,
   No. 1:20-cv-00013-SPC (E.D. Mo.) .................................................................. 18

*Steinberg v. Nationwide Mut. Ins. Co.*,
   224 F.R.D. 67 (E.D.N.Y. Sept. 4, 2004)............................................................. 25

*Stollenwerk v. TriWest Healthcare All.*,
   No. CV–03–0185–PHX–SRB (D. Ariz. June 10, 2008)........................................ 19

*Velez v. Majik Cleaning Serv., Inc.*,
   No. 03 Civ. 8698, 2007 WL 7232783 (S.D.N.Y. June 25, 2007)............................ 22

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011)......................................................................................... 26

*Wal–Mart Stores, Inc. v. Visa U.S.A. Inc.*,
   396 F.3d 96 (2d Cir. 2005) ................................................................................ 31

*Willix v. Healthfirst, Inc.*,
   No. 07–cv–1143, 2011 WL 754862 (E.D.N.Y. Feb. 18, 2011) ............................... 15

**Other Authorities**

*Manual for Complex Litigation* (3d ed. 1995) ............................................................ 14

Newberg & Conte, *Newberg on Class Actions* (3d ed. 1992)........................................................ 12

**Rules**

Federal Rules of Civil Procedure, Rule 12 ...................................................................................... 4

Federal Rules of Civil Procedure, Rule 23 ............................. 12, 13, 14, 17, 24, 25, 26, 27, 28, 30

## I.    INTRODUCTION

Plaintiffs Eduardo Antonio Jimenez Del Rosario, Jayson Mercado, and Taneisha Lewis, on behalf of themselves and all others similarly situated, hereby respectfully request that the Court grant preliminary approval of the parties' proposed class action settlement in this matter under Federal Rule of Civil Procedure 23.[1] In February 2023, Defendant Baldor Specialty Foods, Inc. was the victim of a cybercrime (the "Data Incident"), where Plaintiffs allege the personal identifiable information ("PII" or "Private Information") of approximately 13,882 of its current and former employees was potentially exposed.[2] These employees disclosed their Private Information to Baldor trusting that it would protect their information. But when the Data Incident disclosed Plaintiffs' and Settlement Class Members' Private Information to hackers and others, Plaintiffs and Settlement Class Members were exposed to harm.

To address that harm, Plaintiffs sued Baldor alleging their employer violated its duty to protect their Private Information. Baldor contested their claims from the start, denying lability, and moved to dismiss. After the Court denied Baldor's motion to dismiss in part, and although Plaintiffs believed their claims would survive through class certification and summary judgment, both parties recognized the risks that existed with continued litigation and agreed to discuss early resolution.

After several weeks of hard-fought, arm's-length negotiations, counsel for Plaintiffs and counsel for Baldor reached a Settlement that is fair, adequate, and reasonable. Under the Settlement Agreement ("Settlement" or "S.A."), attached as **Exhibit 1** to the Declaration of Raina Borrelli,

---

[1] Defendant Baldor Specialty Foods, Inc. does not oppose the relief sought in this motion and supports approval of the Settlement.

[2] All capitalized terms herein are intended to have the same meaning as those in the Settlement Agreement.

Defendant will establish a $550,000 non-reversionary Settlement Fund from which Settlement Class Members may obtain various benefits and which will cover all costs of notice and claims administration, as well as attorneys' fees and costs, and any service awards to Plaintiffs. Specifically, the Settlement provides five key benefits to Settlement Class members: (1) payments up to $10,000.00 for unreimbursed economic losses incurred as a result of the Data Incident, such as significant losses associated with identity theft or fraud; (2) payments for time spent mitigating the effects of the Data Incident up to six (6) hours at $25.00 per hour (capped at $150.00); (3) three years of three-bureau credit monitoring services with $1 million in identity theft insurance; (4) in the alternative to claims for unreimbursed economic losses, lost time, and/or credit monitoring, a payment of $100.00; and (5) Baldor has affirmed it made significant information security improvements at great cost, which were paid separate and apart from all other settlement benefits and the Settlement Fund. Plaintiffs strongly believe the Settlement is favorable to the Settlement Class.

Pursuant to Rule 23(e), Plaintiff respectfully moves this Court for entry of an Order: (1) granting preliminary approval of the Settlement; (2) approving the Notice Program; (3) appointing Simpluris as Settlement Administrator; (4) preliminarily certifying the Settlement Class for settlement purposes only; (5) appointing Eduardo Antonio Jimenez Del Rosario, Jayson Mercado, and Taneisha Lewis as Settlement Class Representatives; (6) appointing Raina C. Borrelli and Brittany Resch of Turke & Strauss LLP as Settlement Class Counsel; (7) approving the form and content of the Short Form Notice (S.A. Ex. A), Long Form Notice (S.A. Ex. B), and Claim Form (S.A. Ex. C), all attached to the Settlement, respectively; and (8) scheduling a Final Fairness Hearing to consider entry of a final order approving the Settlement, final certification of

the Settlement Class for settlement purposes only, and the forthcoming request for attorneys' fees, costs, and expenses, and Plaintiffs' service awards.

The Court should preliminarily approve the proposed Settlement because it is a fair, reasonable, and adequate compromise of genuinely contested claims that will provide Settlement Class Members with substantial and immediate monetary relief without the risk or delay of further litigation. The terms of the Settlement are fair, reasonable, and consistent with precedent concerning class settlements in this District and elsewhere.

## II.    STATEMENT OF ALLEGED FACTS

### a.    Baldor's Business

Baldor is one of the largest importers and distributors of fresh produce and specialty foods in the Northeast and Mid-Atlantic regions of the United States. Dkt. 33 ("SAC") ¶2. Baldor is based in the Bronx in New York. *Id*. ¶10.

To run its business, Baldor collects and maintains PII from its current and former employees, *id*. ¶15, including name, address, date of birth, Social Security number, insurance, and other benefit information (the "Private Information"), *id*. ¶¶22, 33, 47, 60. Plaintiffs allege that Baldor promised to protect its employees' PII, disclosing that it is "committed to safeguarding your privacy" and that "your privacy is extremely important to us." *Id*. ¶18. Plaintiffs further allege that Baldor also claimed that "[w]e take very seriously our responsibility to maintain the security of your personal information and hence, are committed to prevent unauthorized or unnecessary access to your personal information," and reassured that "[w]e work to put systems in place to detect and deter identify theft and unauthorized use of your personal information." *Id*. ¶19. Plaintiffs and Settlement Class Members alleged that they relied on Baldor's explicit and implicit promises when agreeing to work for Baldor. *Id*. ¶¶16, 35, 49, 62. Yet, Plaintiffs allege that Baldor failed to

implement the safeguards and systems needed to fulfill those promises. *Id*. ¶¶3-5, 21, 27, 28. As a result, Plaintiffs allege that Baldor's misconduct led to the Data Incident. Defendants deny that these allegations fairly or accurately describe their policies or conduct with respect to the security of the data of Plaintiffs and the proposed Settlement Class.

### b.  The Data Incident

In February 2023, Baldor discovered that cybercriminals had bypassed its security systems and potentially compromised employee PII. *Id*. ¶¶20-23. Baldor was unable to detect the hack before it happened, to stop the hackers from accessing employee PII, or to even know that a hack had even happened for 18 days. *Id*. As a result, Baldor's Data Incident potentially exposed the PII belonging to over 13,000 current and former employees, including Plaintiffs. *Id*. ¶¶31-32, 36, 45-46, 50, 58-59, 63. On April 7, 2023, Baldor began notifying the Settlement Class Members about the Data Incident. *Id*. ¶6.

### c.  Procedural History

Following Defendants' notification to those affected by the Data Incident and an investigation by Settlement Class Counsel, Plaintiff Eduardo Antonio Jimenez Del Rosario individually and on behalf of a putative class, filed an action against Baldor in this Court on April 28, 2023. Dkt. 1. Plaintiff brought the following claims: negligence, negligence *per se*, breach of implied contract, breach of fiduciary duty, unjust enrichment, and declaratory judgment.

On May 5, 2023, Plaintiff Rosario filed his amended class action complaint, naming Jayson Mercado as an additional named Plaintiff. Dkt. 9. On July 12, 2023, Baldor moved to dismiss Plaintiffs' complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), filing and citing to extrinsic evidence. Dkts. 15-18. Plaintiffs moved for jurisdictional discovery on July 26, 2023. Dkts. 21-25. This Court stayed the motion to dismiss pending resolution of the motion for

discovery. Dkt. 26. Baldor opposed the motion for discovery on August 3, 2023, Dkt. 27, and Plaintiffs replied on August 7, 2023, Dkt. 28.

While Plaintiffs' motion for discovery was pending, Plaintiffs moved for leave to file a second amended class action complaint to add Taneisha Lewis as an additional named plaintiff. Dkts. 29-30. Baldor opposed that motion for leave on October 6, 2023. Dkt. 31. On October 12, 2023, this Court granted Plaintiffs motion for leave, Dkt. 32, and on that same day, Plaintiffs filed their Second Amended Complaint, Dkt. 33. On October 26, 2023, Baldor filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). Dkts. 35-37. Plaintiffs opposed that motion on November 16, 2023, Dkt. 42, and Baldor replied on December 1, 2023, Dkt. 48. On December 5, 2023, this Court granted in part and denied in part Baldor's motion to dismiss Plaintiffs' Second Amended Complaint. Dkt. 51.

Thereafter, having carefully considered the risk and uncertainties of continued litigation and all other factors bearing on the merits, the Parties began an arms'-length discussion of settlement of this Litigation. Over months of hard-fought negotiations, on February 6, 2024, the Parties succeeded in reaching agreement on the principal terms of a settlement, subject to final mutual agreement on all the necessary documentation. That documentation is now complete and culminated in the Settlement Agreement, which was finalized and executed on March 22, 2024. Settlement Class Counsel have successfully negotiated the Settlement of this matter to the benefit of Plaintiffs and Settlement Class Members. Borrelli Decl. ¶15.

### d.  Settlement Terms

#### i.  The Settlement Class

The Settlement provides for the certification of the Settlement Class, defined as "All individuals residing in the United States whose PII was potentially compromised in the Data

Incident discovered by Baldor in February 2023, including all those who received notice of the breach." S.A. ¶50. "PII" includes, but is not limited to, names, addresses, dates of birth, Social Security numbers, insurance and other benefits information. *Id*. ¶43. "Data Incident" means the potential unauthorized disclosure of personal information to an unauthorized third party that occurred in approximately February 2023. *Id*. ¶20. And "Participating Settlement Class Member" means a Settlement Class Member who does not submit a valid Request for Exclusion prior to the Opt-Out Deadline. *Id*. ¶39.

### ii. Settlement Benefits

The Settlement provides Settlement Class Members with timely benefits targeted at remediating the specific harms they have suffered as a result of the Data Incident. The benefits of the Settlement are available to all Settlement Class Members who submit timely and valid claims. Baldor will establish a "Settlement Fund" of five hundred and fifty thousand dollars ($550,000) which will be used to, *inter alia*, satisfy payments to Settlement Class Members, costs of notice, and claims administration. S.A. ¶53, §III. This Settlement Fund will pay for a variety of benefits, which will provide significant and timely relief to Settlement Class Members. *Id*. §IV.

### 1. Compensation for Unreimbursed Economic Losses

Up to $10,000.00 is available for each Settlement Class Member who submits a timely and valid claim with supporting documentation for unreimbursed ordinary and/or extraordinary economic losses as a result of the Data Incident. *Id*. ¶64(ii). Examples of losses include, without limitation, unreimbursed losses relating to fraud or identity theft; professional fees including attorneys' fees, accountants' fees, and fees for credit repair services; costs associated with freezing or unfreezing credit with any credit reporting agency; credit monitoring costs that were incurred on or after the Data Incident through the date of claim submission; and miscellaneous expenses such as notary, fax, postage, copying, mileage, and long-distance telephone charges. *Id*.; *see also*

*id*. ¶58. This relief ensures that Settlement Class Members who suffered from significant and unreimbursed economic losses (*e.g.*, identity theft and fraud) will receive meaningful monetary relief.

### 2. Lost Time

Up to $150.00 per Settlement Class Member who submits a valid and timely claim is available for time spent "mitigating the effects of the Data Incident." *Id*. ¶64(iii). Here, up to six (6) hours can be reimbursed at a rate of $25.00 per hour. *Id*. To be eligible, Settlement Class Members must check a box attesting "that they spent the claimed time responding to issues raised by the Data Incident." *Id*. Claims for Lost Time may be combined with claims for unreimbursed economic losses, but are subject to the $10,000 cap. *Id*. No documentation is required to claim this benefit.

### 3. Credit Monitoring

In addition to monetary reimbursements, Plaintiff negotiated for significant additional credit monitoring and identity theft protection. Settlement Class Members are eligible to enroll in three (3) years of three-bureau credit monitoring services with insurance $1 million in identity theft insurance. *Id*. ¶¶19, 64(i). This benefit may be combined with a claim for Unreimbursed Economic Losses and Lost Time, but requires no documentation. *Id*. The Settlement Class Member choosing this benefit will receive a code, which must be timely activated within 180 days. *Id*. No documentation is required to claim this benefit.

### 4. Cash Compensation

Up to $100.00 per Settlement Class Member who submits a valid and timely claim is available as cash compensation—as an alternative to making a claim for Unreimbursed Economic Losses, Lost Time, or Credit Monitoring Services. *Id*. ¶64(iv). This amount may increase or decrease *pro rata*. *Id*. No documentation is required to claim this benefit.

### 5.   Additional Security Measures

Baldor has confirmed it has made significant information security improvements since the Data Incident. *Id.* ¶80. Because Baldor is paying for these improvements separate and apart from the Settlement Fund, this relief will not reduce any other relief afforded to the Settlement Class. *Id*. Altogether, these improvements will safeguard the PII Baldor still possesses, including data belonging to Settlement Class Members.

### 6.   Costs of Notice and Settlement Administration

The Settlement Fund provided by Baldor will pay the entire cost to administer the Settlement, including the Claims Administrator's (Simpluris) costs to notify the Settlement Class and process claims. *Id*. ¶¶62, 74. The estimated cost of notice and administration is $24,215. Borrelli Decl. ¶13.

### 7.   Payment of Attorneys' Fees, Costs, and Expenses, and Service Awards

The parties did not discuss or agree upon payment of attorneys' fees, costs, and expenses or Plaintiffs' service awards until after they agreed on all material terms of relief to the Settlement Class. Borrelli Decl. ¶10. The $550,000.00 Settlement Fund established by Baldor will be used to pay for any attorneys' fees and costs, and any service award to Plaintiffs to be requested at a later date. S.A. ¶¶98-100. Subject to Court approval, Plaintiffs shall seek a Service Award not to exceed $5,000 per Plaintiff ($15,000 total). *Id*. ¶98. Settlement Class Counsel will file the applicable motion at least 14 days before the Opt-Out and Objection Deadlines, unless the Court orders otherwise. *Id*. Additionally, Plaintiffs shall seek attorneys' fees not to exceed one-third (33.33%) of the Settlement Fund, or $183,333.33, and up to $10,000 for litigation costs and expenses. *Id*. ¶100. Here too, Settlement Class Counsel will file the applicable motion at least 14 days before the Opt-Out and Objection Deadlines unless the Court orders otherwise. *Id*.

### iii. Notice to Settlement Class Members

Within seven (7) days after the date of the Preliminary Approval Order, Baldor shall provide to the Settlement Administrator, Simpluris, the Settlement Class List, and within thirty (30) days shall distribute Notice to the Settlement Class Members. *Id.* ¶81. Here, the Settlement Administrator will provide notice via two effective methods. *Id.*

First, Notice shall be disseminated via U.S. mail to all Settlement Class Members. *Id.* ¶¶36, 81. Settlement Class Counsel may elect to send a reminder Notice as well. *Id.* ¶¶74, 81.

Second, the Settlement Administrator will establish the Settlement Website. *Id.* ¶¶55, 81. The Settlement Website will provide Settlement Class Members with easy access to all relevant documents—including, but not limited to, the Short Form Notice, Long Form Notice, the Claim Form, the Settlement Agreement and all of its exhibits, Plaintiff's motion for preliminary approval, the Preliminary Approval Order, Plaintiff's motion for an award of attorneys' fees, costs and expenses, and/or service awards, and Plaintiff's operative complaint. *Id.* ¶55. The Settlement Website will also contain the Claim Form that may be submitted online through the Settlement Website, and the deadlines for filing a Claim, Objection, Exclusion requests, and the date of the Final Fairness Hearing. *Id.*

### iv. Claims, Objections, Opt-Outs, and Termination

Settlement Class Members may submit Claim Forms either (1) physically by mail to the Settlement Administrator, or (2) electronically via the Settlement Website. S.A. ¶¶13, 14, 55, 56. Settlement Class Members will have a period of ninety (90) days after the Notice Deadline to timely submit claims. *Id.* ¶14. This claims period will allow Settlement Class Members to recover for fraud, identity theft, ordinary losses, and lost time that may not occur immediately after the Data Incident (which can be the case when cybercriminals steal Private Information).

The Settlement Administrator will adjudicate all claims. *Id*. ¶¶64, 65-67. As such, the Settlement Administrator will verify that each claimant is a member of the Settlement Class. *Id*. And the Settlement Administrator will determine if a claim is timely and valid. *Id*. ¶64. If the Settlement Administrator determines that a claim is deficient, the Settlement Administrator is authorized to contact any Settlement Class Member to determine its validity or clarify and correct any ambiguities. *Id*. ¶¶65-67. The Settlement Class Member shall have twenty-one (21) days to cure the deficiencies. *Id*. ¶69. But if the Settlement Administrator determines the deficiencies were not sufficiently cured, the Settlement Administrator must notify the Settlement Class Member of that determination within ten (10) days. *Id*.

To opt-out of the Settlement's benefits, Settlement Class Members can submit a Request for Exclusion to the Settlement Administrator no later than sixty (60) days after the Notice Deadline, the "Opt-Out Deadline." *Id*. ¶¶38, 83. The Request for Exclusion must include the name of the proceeding, the individual's full name, current address, personal signature, and the words "Request for Exclusion," a comparable statement that the individual does not wish to participate in the Settlement, or some other clear manifestation of the intent to opt-out of the Settlement in the written communication. *Id*. ¶83.

To object, Settlement Class Members must file written objections with the Court no later than 60 days after the Notice Deadline, the "Objection Deadline." *Id*. ¶¶37, 84. A written objection must include (i) the name of the proceedings; (ii) the Settlement Class Member's full name, current mailing address, and telephone number; (iii) a statement of the specific grounds for the objection, as well as any documents supporting the objection and a description of whether the objection applies only to the Settlement Class Member, a subset of the Settlement Class, or the entire Settlement Class; (iv) the identity of any attorneys representing the objector (if any), as well as a

description of the attorney's background and prior experience, the amount of anticipated fees and method of calculation, the attorney's hourly rate, and the number of hours spent working; (v) a statement regarding whether the Settlement Class Member (or his/her attorney) intends to appear at the Final Approval Hearing; (vi) a description and/or copies of evidence that may be introduced at fairness hearing; (vii) a list of proceedings in which the Settlement Class Member has submitted an objection during the past five years; and (viii) the signature of the Settlement Class Member or the Settlement Class Member's attorney. *Id.* ¶84.

### v.  Release

As part of the Settlement, Plaintiffs and Settlement Class Members agree to release Baldor and the "Released Parties," from all claims and causes of action that result from, arise out of, are based upon, or relate to any release of Private Information from the Data Incident, that was alleged or could have been alleged in the Litigation, including claims that result from or arise out of the disclosure of Private Information from the Data Incident and other "Released Claims." *Id.* ¶92; *see also id.* §IX.

## III.   LEGAL STANDARD

Federal courts strongly encourage settlements, particularly in class actions and other complex matters where inherent costs, delays, and risks of continued litigation might otherwise outweigh any potential benefit the individual plaintiff—or the class—could hope to obtain. *See Cohen v. J.P. Morgan Chase & Co.*, 262 F.R.D. 153, 157 (E.D.N.Y 2009) ("There is a strong judicial policy in favor of settlement, particularly in the class action context. The compromise of complex litigation is encouraged by the courts and favored by public policy.") (quoting *Denney v. Jenkens & Gilchrist*, 230 F.R.D. 317, 328 (S.D.N.Y. 2005), *aff'd in part and vacated in part*, 443 F.3d 253 (2d Cir. 2006)). "Class action suits readily lend themselves to compromise because of the

difficulties of proof, the uncertainties of the outcome, and the typical length of the litigation. There is a strong public interest in quieting any litigation; this is 'particularly true in class actions.'" *In re Luxottica Group S.p.A. Sec. Litig.* (*In re Luxottica Group Litig.*), 233 F.R.D. 306, 310 (E.D.N.Y. 2006).

In granting preliminary approval, courts direct notice to be provided to settlement class members who are given the opportunity to exclude themselves from or object to the settlement. *In re Nasdaq Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997). At the Final Fairness Hearing, Settlement Class Members may be heard by the Court prior to its determination of whether to grant final approval of the settlement agreement and dismiss the case. *Id*.

Plaintiffs bring this motion pursuant to Federal Rule Civil Procedure 23(e), under which a class action may not be settled without approval of the Court. Under the current iteration of Rule 23(e), in weighing a grant of preliminary approval, district courts must determine whether "giving notice is justified by the parties' showing that the court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e). The Settlement here warrants preliminary approval so that the Settlement Class Members can be notified of the Settlement and provided an opportunity to exclude themselves or voice objection.

## IV.    ARGUMENT

Federal Rule of Civil Procedure 23(e) requires court approval of any class settlement, following notice to the settlement class. The preliminary approval stage provides a forum for the initial evaluation of a settlement, and where no class has been previously certified, a determination as to whether a proposed settlement class should be certified. *See* 2 Newberg & Conte, *Newberg on Class Actions*, §§ 11.22, 11.27 (3d ed. 1992).

Plaintiffs here seek to certify, for settlement purposes only, a Settlement Class defined as "All individuals residing in the United States whose PII was potentially compromised in the Data Incident discovered by Baldor in February 2023, including all those who received notice of the breach." S.A. ¶50. The Settlement Class is estimated to include approximately 13,882 individuals. *Id*. ¶53.

### a.  The Settlement Satisfies the Criteria for Preliminary Approval

The court must determine whether the Settlement Agreement itself is worthy of preliminary approval and of providing notice to the class. Notice is only justified where the parties can show that the court will "likely" be able to approve the proposed settlement. Fed. R. Civ. P. 23(e)(1)(i). Thus, consideration on preliminary approval requires an initial assessment of factors to be fully considered on final approval, namely that "(A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate[]; and (D) the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(A)-(D). In determining whether the relief provided is adequate, courts must consider: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3). *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*, 330 F.R.D. 11, 28 (E.D. N.Y. Jan. 28, 2019); Fed. R. Civ. P. 23(e)(2)(C)(i)-(iv).

The Second Circuit had developed its own list of factors for consideration prior to the 2018 revisions to Rule 23(e), finding preliminary approval of a proposed class action settlement is warranted where it is the result of "serious, informed, non-collusive ("arm's length") negotiations,

where there are no grounds to doubt its fairness and no other obvious deficiencies . . . and where the settlement appears to fall within the range of possible approval." *See Cohen*, 262 F.R.D. at 157; *In re Nasdaq Antitrust Litig.*, 176 F.R.D. at 102; *Bourlas v. Davis Law Assocs.*, 237 F.R.D. 345, 354 (E.D.N.Y. Aug. 30, 2006); *see also Manual for Complex Litigation*, § 30.41 (3d ed. 1995). In making this determination, Second Circuit Courts considered nine *Grinnell* factors:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*In re Initial Pub. Offering Sec. Litig.*, 260 F.R.D. 81, 88 (S.D.N.Y. June 10, 2009) (citing *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974) (*abrogated on other grounds*)). In reviewing the Settlement for substantive fairness, reasonableness, and adequacy, Plaintiffs will examine the Settlement for satisfaction of both the Rule 23 factors, as well as the *Grinnell* factors historically considered by courts within the Second Circuit in order to demonstrate that the Settlement falls well within the "range of possible approval," is "likely" to be granted final approval, and warrants preliminary approval so that notice can issue to the class.

### i. The Settlement Warrants Preliminary Approval Under Rule 23(e).

#### 1. The Plaintiffs and Settlement Class Counsel have adequately represented the Settlement Class.

Under Rule 23(e)(2)(A), the first factor to be considered is whether the class representative and Settlement Class Counsel have adequately represented the class, including the nature and amount of discovery undertaken in the litigation. *See* Fed. R. Civ. P. 23(e)(2)(A), 2018 Advisory Committee Notes. Here, Plaintiffs have maintained contact with counsel, assisted in the investigation of the case, reviewed the Complaints, remained available for consultation throughout

settlement negotiations, reviewed the Settlement Agreement, and answered counsel's many questions. Borrelli Decl. ¶16. Plaintiffs do not have any conflicts with the Settlement Class and have adequately represented Settlement Class Members in the litigation. *Id*.

Settlement Class Counsel has also adequately represented the class. As discussed herein at Section IV.b.i.4, *supra*, Settlement Class Counsel have extensive experience in class action litigation generally, and data breach cases in particular. *See* Borrelli Decl. ¶¶17, 25-34; *Id.* Ex. 2 (firm resume). In negotiating the Settlement, Settlement Class Counsel was thus well positioned and able to benefit from years of experience and familiarity with the factual and legal bases for this case.

Although formal discovery had not been completed prior to the Settlement being reached here, such discovery is not required for a settlement to be adequate. *D'Amato v. Deutsche Bank*, 236 F.3d 78, 87 (2d Cir. 2007) (finding "although no formal discovery had taken place, the parties had engaged in an extensive exchange of documents and other information"); *Castagna v. Madison Square Garden, L.P.*, No. 09-cv- 10211 (LTS)(HP), 2011 U.S. Dist. LEXIS 64218, 2011 WL 2208614, *6 (S.D.N.Y. June 7, 2011) (approving settlement where no formal discovery had taken place but the parties had "completed enough investigation to agree on a reasonable settlement); *Willix v. Healthfirst, Inc.*, No. 07–cv–1143, 2011 WL 754862 at *4 (E.D.N.Y. Feb. 18, 2011). ("The pertinent question is whether counsel had an adequate appreciation of the merits of the case before negotiating") (internal quotations omitted). "In fact, informal discovery designed to develop a settlement's factual predicate is encouraged because it expedites the negotiation process and limits costs which could potentially reduce the value of the settlement." *Castagna*, 2011 WL 2208614, at *6 (citing *Jones v. Amalgamated Warbasse Houses, Inc.*, 97 F.R.D. 355, 360 (S.D.N.Y. 1982)) ("Although little formal discovery has occurred, the parties freely exchanged data during

settlement talks. In view of the way this speeds the negotiation process, informal 'discovery' is to be encouraged"). Here, Settlement Class Counsel carried out a thorough investigation of the claims, and settlement negotiations included a significant informal exchange of information, allowing both parties to evaluate the strengths and weaknesses of Plaintiffs' claims and Defendant's defenses. Borrelli Decl. ¶¶4, 8, 16. Accordingly, Plaintiffs and Settlement Class Counsel have adequately represented the Settlement Class and this factor weighs in favor of preliminary approval.

### 2. The Settlement is the product of serious, informed, and arm's-length negotiations.

Rule 23(e)(2)(B) requires procedural fairness, as evidenced by the fact that "the proposal was negotiated at arm's length." If a class settlement is reached through arm's-length negotiations between experienced, capable counsel knowledgeable in complex class litigation, "the Settlement will enjoy a presumption of fairness." *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 173–74 (S.D.N.Y. 2000); *D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001); *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 693 (S.D.N.Y. 2019).

This Settlement is the result of a thorough investigation and arm's-length negotiations between attorneys experienced in consumer class actions and claims regarding data breaches. Borrelli Decl. ¶¶7-12, 17, 25-34; *see Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 852 (1999) ("[O]ne may take a settlement amount as good evidence of the maximum available if one can assume that parties of equal knowledge and negotiating skill agreed upon the figure through arms-length bargaining."). Throughout the two months of negotiations, the parties exchanged key information needed to inform their strategies, including information about the size and residence of the putative class, the types of information affected by the Data Incident, the scope of the Data Incident and how it occurred, and how Defendant responded to the Data Incident. Borrelli Decl. ¶8. The parties

negotiated at "arm's length"—communicating their positions while evaluating the strengths and weaknesses of the relevant claims and defenses. *Id*. ¶¶7-11. While the negotiations were always collegial, cordial, and professional, there is no doubt that they were adversarial in nature, with all parties forcefully advocating the position of their respective clients. *Id*. ¶11. Ultimately, after weeks of negotiating, the parties reached final resolution. *Id*. ¶12.

Settlement Class Counsel has extensive experience litigating consumer cases, including class actions involving data breaches. Borrelli Decl. ¶¶25-34; *id.* Ex. 2 (firm resume). Taken together, these factors—the time and effort spent on the negotiations and the quantity and quality of information used during those negotiations—favor preliminary approval of the Settlement because they strongly indicate a lack of collusion in the final result. This factor weighs in favor of preliminary approval.

### 3. The Settlement has no obvious deficiencies and does not grant preferential treatment to any Settlement Class Members.

Fed. R. Civ. P. 23(e)(2)(c) requires examination of the relief provided by the Settlement. The benefits made available to Settlement Class Members as a result of this Settlement are significant in comparison to the risk of obtaining no recovery after continued litigation. This Settlement ensures that Settlement Class Members will be compensated for their unreimbursed economic losses and lost time resulting from fraud or other inconveniences suffered as a result of the Data Incident. S.A. ¶64. Moreover, to prevent any additional harm from occurring and to protect from fraud, Settlement Class Members are entitled to additional credit monitoring. *Id*. Should Class Members not be able to prove out of pocket losses or attest to lost time, they are able to simply seek a $100 cash payment, which will require nothing more than checking a box on the claim form. *Id*.

The Settlement terms are consistent with—and are, in fact, better than—agreements in other similar data breach cases, in the Southern District of New York and across the country. *See e.g., Baksh et al. v. IvyRehab Network, Inc.*, No. 7:20-CV-01845 (S.D.N.Y.) (providing up to $75 per class member out of pocket expenses incurred related to the data breach and $20 reimbursement for lost time, with payments capped at $75,000 in aggregate; credit monitoring for claimants; and equitable relief in the form of data security enhancements); *Rutledge et al v. Saint Francis Healthcare System*, No. 1:20-cv-00013-SPC (E.D. Mo.) (providing up to $280 in value to Settlement Class Members in the form of: reimbursement up to $180 of out of pocket expenses and time spent dealing with the data breach; credit monitoring services valued at $100; and equitable relief in the form of data security enhancements).

As the relief provided is well within the range of possible approval when considering the Rule 23(e)(2)(c)(i)-(iv) factors, preliminary approval should be granted.

### a. The costs, risks, and delay of trial and appeal are great.

The benefits conferred by the Settlement are immediate and significant, and Settlement Class Counsel acknowledge that it is possible that the Settlement Class could receive nothing if the case is litigated to trial. Borrelli Decl. ¶¶17-22. While Plaintiffs and Settlement Class Counsel strongly believe in the merits of the case, they also understand that Defendant will assert a number of potentially case-dispositive defenses. *Id.* Proceeding with litigation would open up Plaintiffs to the risk inherent in trying to achieve and maintain class certification and prove liability—both factors considered under the test for final approval under *Grinnell*.

For example, although plaintiffs around the country have often survived motions to dismiss in data breach cases, winning class certification and an eventual jury verdict is far from certain. *See, e.g., Hammond v. The Bank of N.Y. Mellon Corp.*, No. 08 Civ. 6060 (RMB)(RLE), 2010 WL

2643307, at *1 (S.D.N.Y. June 25, 2010) (collecting data breach cases dismissed at the Rule 12(b)(6) or Rule 56 stage); *In re TD Ameritrade Acct. Holder Litig.*, No. C 07-2852 SBA, 2011 WL 4079226, at *5 (N.D. Cal. Sept. 13, 2011); *In re TJX Cos. Retail Sec. Breach Litig.*, 246 F.R.D. 389, 397 (D. Mass. 2007) (refusing to certify data breach class action); *Stollenwerk v. TriWest Healthcare All.*, No. CV–03–0185–PHX–SRB, Slip Op. at 5–6 (D. Ariz. June 10, 2008) (same); *In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*, 293 F.R.D. 21 (D. Me. 2013) (same).

Plaintiffs also recognize the difficulties in establishing liability through summary judgment or even at trial and in achieving a result better than that offered by the Settlement here. A trial on the merits would be complex, time-consuming, and risky. Thus, through the Settlement, Plaintiffs and Settlement Class Members gain significant benefits without having to face further risk of not receiving any relief at all.

### b. The proposed method of distributing relief and processing claims is objective, efficient, and fair.

As described in detail, *supra*, the Settlement Administrator will be responsible for assessing claims and distributing relief. S.A. ¶¶64-69, 72-73. Settlement Class Members will have ninety (90) days after the Notice Deadline to complete and submit a claim form. *Id.* ¶14. The Settlement Administrator will be responsible for evaluating the claims and the evidence submitted, requesting additional documentation and/or information where the claim form is insufficient, and awarding funds. *Id.* ¶¶65-69. As such, the procedure provided for by the Settlement Agreement is objective, efficient, and fair.

### c. The attorneys' fees, costs, and service awards that Plaintiffs will request from this Court are reasonable.

By separate motion, Plaintiffs will seek Court approval of attorneys' fees in an amount not to exceed one-third (33.33%) of the Settlement Fund, or $183,333.33, and reimbursement of costs and expenses in an amount not to exceed $10,000. S.A. ¶100. Additionally, Plaintiffs will seek Service Awards for Eduardo Antonio Jimenez Del Rosario, Jayson Mercado, and Taneisha Lewis of $5,000 per Plaintiff ($15,000 total). *Id.* ¶98. These requests are well within the range of those regularly accepted by Second Circuit courts. *See Hart v. BHH, LLC*, No. 15cv4804, 2020 U.S. Dist. LEXIS 173634, at *30 (S.D.N.Y. Sep. 22, 2020) (awarding 51.75% of the total benefit to the class as attorneys' fees in a claims based class settlement); *In re Telik*, 576 F. Supp. 2d 570, 590 (S.D.N.Y. 2008) ("[i]n contingent litigation, lodestar multiples of over 4 are routinely awarded by courts") (citation omitted); *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 481–83 (S.D.N.Y. 2013) (granting an award of $5,000 to $7,500 to Plaintiffs); *Dornberger v. Metropolitan Life Ins. Co.*, 203 F.R.D. 118 (S.D.N.Y. 2001) (noting in class actions representative plaintiff awards from $2,500 to $85,000 are commonly accepted). Plaintiffs will make these requests by separate motion at least fourteen (14) days prior to Settlement Class Members' deadline to Object to or Opt-Out from the Settlement, the attorneys' fees, costs, and service awards sought clearly fall within the range of possible approval. S.A. ¶¶98, 100.

### d. No additional agreement related to the Settlement Exist

There are no additional agreements that require identification and/or examination under Rule 23(e)(3).

### 4. The Settlement Treats Class Members Equitably to Each Other.

Further, the Settlement treats all Settlement Class Members fairly and equally. Each Settlement Class Member is entitled to file a claim to obtain settlement benefits. Accordingly, and because the Settlement Agreement meets all of the required criteria under Rule 23(e), preliminary approval should be granted.

#### ii. *Grinnell* Factors

Prior to the revisions to Rule 23, the Second Circuit relied upon the nine factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974) (*abrogated on other grounds*), to guide its assessment of whether a class action settlement should be approved. While preliminary approval requires only an initial evaluation of the settlement, and Rule 23 has been since amended, the factors remain instructive and have been used by Second Circuit courts in evaluating settlements even after 2018. *See Johnson v. Rausch, Sturm, Israel, Enerson & Hornik, LLP*, 333 F.R.D. 314, 320 (S.D.N.Y. 2019) (considering both the Rule 23 and *Grinnell* factors on consideration of a motion for preliminary approval).

**First,** the complexity, expense, and likely duration of the litigation support preliminary approval. As discussed *supra*, continued litigation is likely to be complex, long, and expensive. Borrelli Decl. ¶¶17-22. For example, Plaintiffs would likely need to gain and maintain class certification through appeal and trial, and then prevail on summary judgment. *Id.* Additionally, the amount of data-expert analysis and testimony needed to bring this case to trial would increase costs significantly, as well as add to the length of time needed to resolve the matter. Thus, this factor weighs in favor of approval.

**Second,** the reaction of class members is not yet apparent. While the Settlement Class Representatives have reviewed and approved the Settlement Agreement, other Settlement Class

Members have not yet had the same opportunity. As such, this factor is appropriately examined after Notice has issued to Settlement Class Members and once they have had the opportunity to make a claim, exclude themselves, or object to the Settlement.

**Third,** the stage of the proceedings and the amount of discovery completed supports settlement approval. While the case is early in litigation, the parties' negotiations included an exchange of information sufficient to allow both sides to assess the claims and defenses at issue. Borrelli Decl. ¶¶7-11. Early settlement where the parties are adequately informed to negotiate is commended. *Castagna*, 2011 U.S. Dist. LEXIS 64218, at *30–31 (commending plaintiffs' attorneys for negotiating early settlement and avoiding hundreds of hours of legal fees); *In re Interpublic Sec. Litig.*, No. 02 Civ. 6527, 2004 WL 2397190, *12 (S.D.N.Y. Oct. 26, 2004) (explaining that early settlements should be encouraged when warranted by the circumstances of the case). As discussed *supra*, the parties had more than enough information to adequately evaluate the claims and defenses at issue. As such, this factor weighs in favor of approval.

**Fourth, Fifth, and Sixth,** the risks of establishing liability, damages, and maintaining a class through trial and appeal weigh in favor of approval. Although Plaintiffs firmly believe in the merits of the case, litigating in such an evolving area of law involves significant risk. Borrelli Decl. ¶¶17-21. "Litigation inherently involves risks." *In re Painewebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 126 (S.D.N.Y. 1997). "If settlement has any purpose at all, it is to avoid a trial on the merits because of the uncertainty of the outcome." *Id*. (quoting *In re Ira Haupt & Co.*, 304 F. Supp. 917, 934 (S.D.N.Y. 1969)); *see also Velez v. Majik Cleaning Serv., Inc.*, No. 03 Civ. 8698, 2007 WL 7232783, at *6 (S.D.N.Y. June 25, 2007) (noting "there are always risks in proceeding to trial and these risks are compounded by virtue of the nature of class action litigation.") (citing *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 185 (W.D.N.Y. 2005)). While Plaintiffs remain confident in

the strength of their claims, additional litigation leaves open the risk that they will be unable to meet the burdens of establishing liability, proving causation and damages, and gaining and maintaining certification through trial. Borrelli Decl. ¶¶17-21. Thus, these factors weigh in favor of Settlement approval.

**Seventh,** the ability of Defendant to withstand a greater judgment is not at issue here. In fact, even if Defendant could withstand a greater judgment, its ability to do so, "standing alone, does not suggest that the settlement is unfair." *Eastman Kodak Co*., 228 F.R.D. at 186 (quoting *In re Austrian*, 80 F. Supp. 2d at 178 n.9). Thus, this factor is neutral and does not preclude the Court from granting preliminary approval.

**Eighth and Ninth,** the Settlement provides for substantial relief for the Settlement Class, especially in light of all attendant risks of litigation. The Settlement establishes a Settlement Fund of five hundred and fifty thousand dollars ($550,000) to provide Settlement Class Members up to $10,000.00 for unreimbursed economic losses, up to $150.00 for lost time, three years of credit monitoring and identity insurance with $1 million in coverage, and an alternative cash compensation payment of $100.00. S.A. ¶64. The value achieved through the Settlement is guaranteed, where chances of prevailing on the merits are uncertain. Borrelli Decl. ¶¶17-21. Again, while Plaintiffs strongly believe in the merits of their case, they also understand that Defendant will assert a number of potentially case-dispositive defenses. *See id.* Proceeding with litigation would open Plaintiffs up to the risks inherent in trying to achieve and maintain class certification and prove liability and damages. *Id.* Through the Settlement, Plaintiffs and Settlement Class Members gain significant benefits without having to face further risk of not receiving any relief at all. *Id.* ¶ 23.

The *Grinnell* factors weigh in favor of approval of the Settlement—and certainly at least support preliminary approval. As such, this Court should grant Plaintiffs' motion and allow notice to issue.

**b.  Preliminary Certification of the Settlement Class is Appropriate**

"Before certification is proper for any purpose—settlement, litigation, or otherwise—a court must ensure that the requirements of Rule 23(a) and (b) have been met." *Denney v. Deutsche Bank AG*, 443 F.3d 253, 270 (2d Cir. 2006) (concluding in part that "the District Court conducted a Rule 23(a) and (b) analysis that was properly independent of its Rule 23(e) fairness review"); *see also Lizondro-Garcia v. Kefi LLC*, 300 F.R.D. 169, 174 (S.D.N.Y. May 29, 2014). Under Rule 23(a), a class action may be maintained where the movants demonstrate (1) the class is so numerous that joinder is impracticable; (2) the class has common questions of law or fact; (3) the representatives' claims are typical of the class claims; and (4) the representatives will fairly and adequately protect class interests. *See* Fed. R. Civ. P. 23(a). Additionally, under Rule 23(b)(3), a class may be maintained where "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

Compared to a traditional certification analysis of a class that is not settled, the Court here undertakes a different analysis when certifying a class action that is settled. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). The Court's review, in certain aspects, of a settlement-only class certification motion is lessened—without a trial, the case management issues need not be confronted. *Id.* In this Circuit, courts have found that "[i]n deciding certification, 'courts must take a liberal rather than restrictive approach in determining whether the Plaintiffs satisfies these requirements and may exercise broad discretion in weighing the propriety of a putative class.'"

*Cohen v. J.P. Morgan Chase & Co.*, 262 F.R.D. at 158 (quoting *Steinberg v. Nationwide Mut. Ins. Co.*, 224 F.R.D. 67, 72 (E.D.N.Y. Sept. 4, 2004)); *see also Marisol A. v. Giuliani*, 126 F.3d 372, 377 (2d Cir.1997) ("Rule 23 is given a liberal rather than restrictive construction, and courts are to adopt a standard of flexibility" in deciding whether to grant certification.).

Indeed, courts have been certifying similar nationwide settlement classes in data breach cases. *See, e.g., McFarlane v. Altice USA, Inc.*, No. 20-cv-1297, Dkt. 94 (S.D.N.Y.) (granting preliminary approval in data breach settlement)*; In re Hudson's Bay Co. Data Security Incident Consumer Litig.*, No. 18-cv-8472, Dkt. 181 (S.D.N.Y.) (same); *In re Equifax, Inc. Customer Data Security Breach Litig.*, MDL Docket No. 2800, No. 1:17-md-2800-TWT, 2020 WL 256132 (N.D. Ga. Mar. 17, 2020), *rev'd on other grounds*, 999 F.3d 1247, 1274–75 (11th Cir. 2021); *In re Target Corp. Customer Data Security Breach Litig.*, 309 F.R.D. 482 (D. Minn. 2015); *In re Heartland Payment Systems, Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040 (S.D. Tex. 2012); *In re Marriott Int'l, Inc., Cust. Data Sec. Breach Litig.*, No. 19-MD-2879, 341 F.R.D. 128 (D. Md. 2022); *In re Brinker Data Incident Litig.*, No. 3:18-CV-686-TJC-MCR, 2021 WL 1405508, at *1 (M.D. Fla. Apr. 14, 2021). Because the Settlement Class meets all requirements for certification under Rule 23, this Court should grant Plaintiff's request.

### i.  The Settlement Class satisfies the requirements of Rule 23(a).

#### 1.  Numerosity

Numerosity requires "the class [be] so numerous that joinder of all members is impractical." Fed. R. Civ. P. 23(a)(1). While there is no numerical requirement for satisfying the numerosity requirement, forty class members generally satisfies the numerosity requirement. *Alcantara v. CNA Mgmt., Inc.*, 264 F.R.D. 61, 64 (S.D.N.Y. Dec. 8, 2009); *Iglesias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363, 370 (S.D.N.Y. Jan. 29, 2007); *see also Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995). Here, there are approximately 13,882

individuals who are part of the Settlement Class. S.A. ¶53. This large number of persons in the Settlement Class easily renders joinder impracticable. As such, the numerosity requirement is satisfied.

### 2. Commonality

Commonality requires Plaintiffs to demonstrate "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The threshold for meeting this prong is not high—commonality does not require that every question be common to every member of the class, but rather that the questions linking class members are substantially related to the resolution of the litigation and capable of generating common answers even where the individuals are not identically situated. *Lizondro-Garcia v. Kefi LLC*, 300 F.R.D. at 175 (citing *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)). A plaintiff may meet the commonality requirement where the individual circumstances of class members differ, but "their injuries derive from a unitary course of conduct by a single system." *Marisol A.*, 126 F.3d at 377 (per curiam). "Even a single common legal or factual question will suffice." *Jackson v. Bloomberg, L.P.*, 298 F.R.D. 152, 162, (S.D.N.Y. Mar. 19, 2014) (quoting *Freeland v. AT & T Corp.*, 238 F.R.D. 130, 140 (S.D.N.Y. Aug. 17, 2006)).

Here, the commonality requirement is met because multiple common issues exist. For example, whether Defendant failed to adequately safeguard the records of its current and former employees who entrusted Defendant with their Private Information, such as Plaintiffs and other Settlement Class Members, is a question common across the entire Settlement Class. Defendant's data security safeguards were common across the Class, and those applied to the data of one Settlement Class Member did not differ from those safeguards applied to another. Other specific common issues include, but are not limited to:

- ▪ Whether Defendant had a duty to use reasonable care in safeguarding Plaintiffs' and the Settlement Class Members' Private Information;

- ▪ Whether Defendant took reasonable measures to determine the extent of the Data Incident after discovering it;
- ▪ Whether Defendant's notice of data breach was reasonable.

These common questions, and others alleged in the Complaint, are central to the causes of action brought here and will generate common answers. Thus, Plaintiffs have met the commonality requirement of Rule 23.

### 3. Typicality

Under Rule 23(a)(3), the typicality requirement is satisfied where "the claims or defenses of the class representatives have the same essential characteristics as those of the class as a whole." Fed. R. Civ. P. 23(a)(3); *see also In re Flag Telecom Holdings, Ltd. Securities Litig.*, 574 F.3d 29, 35 (2d Cir. 2009) (internal quotation omitted); *Bolanos v. Norwegian Cruise Lines Ltd.*, 212 F.R.D. 144, 155 (S.D.N.Y. Nov. 26, 2002). The crux of the typicality requirement is to ensure that "maintenance of a class action is economical and [that] the named Plaintiffs' claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Marisol A.*, 126 F.3d at 376.

Here, Plaintiffs' and Settlement Class Members' claims all stem from the same event—the Data Incident at issue in the Complaint—and the cybersecurity protocols that Defendant had (or did not have) in place to protect Plaintiffs' and Settlement Class Members' data. *See* Dkt. 33 (SAC).

Thus, Plaintiffs' claims are typical of the Settlement Class Members' claims and the typicality requirement is satisfied.

### 4. Adequacy

A representative plaintiff must be able to provide fair and adequate representation for the class. To satisfy the adequacy of representation requirement, plaintiffs must establish that: (1) there is no conflict of interest between the class representatives and other members of the class; and (2) the plaintiff's counsel is qualified, experienced, and generally able to conduct the litigation.

*Bolanos*, 212 F.R.D. at 156 (quoting *Marisol A.*, 126 F.3d at 378); *see also Amchem*, 521 U.S. at 624.

Here, Plaintiffs' interests are aligned with those of the Settlement Class in that they seek relief for injuries arising out of the same Data Incident. *See* Borrelli Decl. ¶¶2, 3, 16. Plaintiffs' and Settlement Class Members' data was all allegedly compromised in the same manner. *Id.* Under the terms of the Settlement Agreement, Plaintiffs and Settlement Class Members will all be eligible for credit monitoring and monetary relief. S.A. ¶64.

Moreover, counsel for Plaintiffs have significant experience as vigorous class action litigators and are well suited to advocate on behalf of the Settlement Class. *See* Borrelli Decl. ¶¶25-34; Ex. 2 (firm resume). They have put their collective experience to use in negotiating an early-stage settlement that guarantees immediate relief to Settlement Class Members. Thus, the requirements of Rule 23(a) are satisfied.

### ii. The Settlement Class satisfies the requirements of Rule 23(b).

Rule 23(b)(3) provides that class certification is proper when "questions of law or fact common to class members predominate over any questions affecting only individual members, and . . . a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). This inquiry has two prongs: (1) predominance and (2) superiority.

### 1. Predominance

To show that common issues predominate, Plaintiffs must demonstrate that common questions of law or fact relating to the class predominate over any individualized issues. *Bolanos*, 212 F.R.D. at 157. This requirement "tests whether the proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. The predominance

requirement is met when the Defendant's wrongful acts involve common practices, or when the Defendant has a common defense. *Fox v. Cheminova*, 213 F.R.D. 113, 130 (E.D.N.Y. Feb. 28, 2003) (citing *In re "Agent Orange" Prod. Liab. Litig.*, 818 F.2d 145, 166–167 (2d Cir. 1987)). Predominance is regularly met in cases where the focus is on the conduct of a defendant rather than that of an individual plaintiff, making it particularly susceptible to common, generalized proof. *Cohen*, 262 F.R.D. at 159.

In this case, the key predominating questions are whether Defendant had a duty to exercise reasonable care in safeguarding, securing, and protecting the personal information of Plaintiffs and Settlement Class Members, and whether Defendant breached that duty. *See* Dkt. 33 (SAC). The common questions that arise from Defendant's conduct predominate over any individualized issues. Other courts have recognized that the types of common issues arising from data breaches predominate over any individualized issues when evaluating nationwide settlements. *See, e.g., In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 312–315 (N.D. Cal. Aug. 15, 2018) (finding predominance was satisfied because "Plaintiffs' case for liability depend[ed], first and foremost, on whether [the defendant] used reasonable data security to protect Plaintiffs' personal information," such that "the claims rise or fall on whether [the defendant] properly secured the stolen personal information," and that these issues predominated over potential individual issues); *see also Hapka v. CareCentrix, Inc.*, Case No. 2:16-cv-02372, 2018 WL 1871449, at *2 (D. Kan. Feb. 15, 2018) (finding predominance was satisfied in a data breach case, stating "[t]he many common questions of fact and law that arise from the E-mail Security Incident and [Defendants'] alleged conduct predominate over any individualized issues"); *In re The Home Depot, Inc., Customer Data Sec. Breach Litig.*, Case No. 1:14-md-02583-TWT, 2016 WL 6902351, at *2 (N.D. Ga. Aug. 23, 2016) (finding common predominating questions included whether Home Depot

failed to reasonably protect class members' personal and financial information, whether it had a legal duty to do so, and whether it failed to timely notify class members of the data breach); *In re Heartland*, 851 F. Supp. 2d at 1059 (finding predominance satisfied in data breach case despite variations in state laws at issue, concluding such variations went only to trial management, which was inapplicable for settlement class). Additionally, because the claims are being certified for purposes of settlement, there are no issues with manageability, and resolution of thousands of claims in one action is far superior to individual lawsuits. *Amchem*, 521 U.S. at 620 ("Confronted with a request for settlement-only certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial.").

### 2.  Superiority

Second, the resolution of hundreds of claims in one action is far superior to litigation via individual lawsuits. Certification of the Settlement Class will increase judicial efficiency and conserve resources—compared to the alternative of individually litigating hundreds (if not thousands) of data breach cases arising out of the same Data Incident. *See* Borrelli Decl. ¶20. Because the common questions of fact and law that arise from Defendant's conduct predominate over any individualized issues, and a settlement class is the superior vehicle by which to resolve these issues, and the requirements of Rule 23(b)(3) are met. Thus, the class should be certified for settlement purposes.

### c.  The Court Should Approve the Proposed Notice Program

Rule 23(e)(1) requires the Court to "direct reasonable notice to all class members who would be bound by" a proposed Settlement. Fed. R. Civ. P. 23(e). For settlement classes, like this one, certified under Rule 23(b)(3), the parties must provide "the best notice that is practicable

under the circumstances, including individual notice to all members who can be identified through reasonable effort." *Id*. 23(c)(2)(B). The best practicable notice is that which "is reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co*., 339 U.S. 306, 314 (1950). Rule 23(c)(2)(B) specifically permits notice to be sent by "U.S. Mail, electronic mail, or other appropriate means." The Notice Plan negotiated here is the best practicable. The Notice plan calls for Notice to issue via U.S. mail to the addresses Defendant has on record, and that it used to provide Settlement Class Members with initial notice of the Data Incident. *See* S.A. ¶81.

"The standard for the adequacy of a settlement notice in a class action under either the Due Process Clause or the Federal Rules is measured by reasonableness." *Wal–Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 113–14 (2d Cir. 2005). There are no rigid rules for determining whether a settlement notice to the class satisfies constitutional or Rule 23(e) requirements; the notice merely must "fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings." *Id*. at 114. Courts within the Second Circuit have explained that a Rule 23 Notice will satisfy due process where it describes the terms of the settlement generally and informs the class about the allocation of attorneys' fees, and provides specific information regarding the date, time, and place of the final approval hearing. *Charron v. Pinnacle Group N.Y. LLC*, 874 F. Supp. 2d 179, 191 (S.D.N.Y. 2012) (internal citations omitted). The notice must also "contain information that a reasonable person would consider to be material in making an informed, intelligent decision of whether to opt out or remain a member of the class and be bound by the final judgment." *In re Nissan Motor Corp.*

*Antitrust Litig.*, 552 F.2d 1088, 1105 (5th Cir. 1977); *Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 338 (2d Cir. 2006).

The substance of the Notice here is designed to be clear and concise and inform Settlement Class Members of the general terms of the Settlement, the allocation of attorneys' fees, and provide specific information regarding the date, time, and place of the final approval hearing. *See* S.A. Exs. A-C. As such, the proposed Notice Plan should be approved.

### d.  The Court Should Appoint the Settlement Administrator

In connection with the notice plan and settlement administration, the parties request that the Court appoint Simpluris to serve as the Settlement Administrator. Simpluris has a long and proven track record of successfully administrating complex class action settlements. *See* Borrelli Decl. ¶13.

### e.  The Court Should Appoint the Class Representatives

Plaintiffs Eduardo Antonio Jimenez Del Rosario, Jayson Mercado, and Taneisha Lewis should be provisionally appointed Class Representatives. As set forth above, they have represented the Settlement Class with no conflict of interest or antagonism between themselves and other members of the class. Their Private Information, like the Private Information of other Settlement Class Members, has been impacted in the same Data Incident, and, as a result, Plaintiffs have the same interests as the Settlement Class Members. *See* Borrelli Decl. ¶¶2-4, 16. Moreover, Plaintiffs have capably represented the Settlement Class—assisting in the investigation of the case, reviewing, and approving pleadings, maintaining contact with Settlement Class Counsel, and answering Settlement Class Counsel's many questions. *Id.* ¶16. Finally, Plaintiffs have been informed about the nature of a class action and the potential advantages and disadvantages by proceeding in a class action rather than individually. *Id*.

### f.  The Court Should Appoint Settlement Class Counsel

Plaintiffs request appointment of Raina C. Borrelli and Brittany Resch of Turke & Strauss LLP as Settlement Class Counsel. Settlement Class Counsel has extensive experience prosecuting class actions and other complex cases, and in particular, data breach cases. Borrelli Decl. ¶¶25-34; Ex. 2 (firm resume).

## V.    CONCLUSION

The Settlement readily meets the standards for preliminary approval. Plaintiffs respectfully request that this Honorable Court enter an Order:

1.    Preliminarily approving the Settlement;

2.    Directing that Notice be disseminated to the Settlement Class Members in accordance with the Notice Program;

3.    Appointing Simpluris as Settlement Administrator;

4.    Approving the form and content of the Short Form Notice (S.A. Ex. A), Long Form Notice (S.A. Ex. B), and Claim Form (S.A. Ex. C) attached to the Settlement Agreement;

5.    Appointing Eduardo Antonio Jimenez Del Rosario, Jayson Mercado, and Taneisha Lewis as Representatives of the Class;

6.    Appointing Raina C. Borrelli and Brittany Resch of Turke & Strauss LLP as Settlement Class Counsel;

7.    Scheduling a Final Fairness Hearing to consider the entry of the final order and judgment approving the Settlement and the request for attorneys' fees, costs, expenses, and Plaintiff's service awards to be held approximately 120 days after entry of the Preliminary Approval Order; and

8.     Such other relief as the Court deems just and proper.

Dated:  March 25, 2024                    Respectfully submitted,

By:  */s/ Raina C. Borrelli*
         Raina C. Borrelli
         raina@turkestrauss.com
         TURKE & STRAUSS LLP
         613 Williamson St., Suite 201
         Madison, WI 53703
         Telephone (608) 237-1775
         Facsimile: (608) 509-4423

         James J. Bilsborrow (NY Bar # 519903)
         jbilsborrow@weitzlux.com
         WEITZ & LUXENBERG, PC
         700 Broadway
         New York, NY  10003
         Telephone: (212) 558-5500

         *Attorneys for Plaintiff and the Proposed Class*

**<u>CERTIFICATE OF SERVICE</u>**

I, Raina C. Borrelli, hereby certify that on March 25, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel of record via the ECF system.

DATED this 25th day of March, 2024.

TURKE & STRAUSS LLP

By:  *<u>/s/ Raina C. Borrelli</u>*
Raina C. Borrelli
raina@turkestrauss.com
TURKE & STRAUSS LLP
613 Williamson St., Suite 201
Madison, WI 53703
Telephone: (608) 237-1775
Facsimile: (608) 509-4423