## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| EDUARDO ANTONIO JIMENEZ DEL ROSARIO, JAYSON MERCADO, and TANEISHA LEWIS, on behalf of themselves and all others similarly situated, <br><br>                 Plaintiffs, <br><br> v. <br><br> BALDOR SPECIALTY FOODS, INC., <br><br>                 Defendant. | Case No. 1:23-cv-03580 <br><br> Judge Alvin K. Hellerstein |

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION
## FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

## <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION ................................................................................................ 1

II.   THE SETTLEMENT ........................................................................................... 2

III.  BACKGROUND ................................................................................................. 2

   a.  Defendants' Data Breach and Plaintiffs' Claims.................................................. 2

   b.  Procedural History ............................................................................................... 3

   c.  Arms'-length Negotiations & Preliminary Approval........................................... 4

   d.  Notice Program & Claims Activity...................................................................... 5

IV.   ARGUMENT ....................................................................................................... 5

   a.  The Court Should Approve the Settlement Under Rule 23 and the Grinnell Factors......... 5

      i.   Plaintiffs and counsel represented the class "adequately" ............................. 7

      ii.  The Court should presume the Settlement is "approvable" ............................ 9

      iii. The Settlement's relief is "adequate" considering this case's complexity and risks
           and the relief this settlement achieves .................................................... 10

      iv.  The Settlement treats class members equitably and is within the "range of
           reasonableness"....................................................................................... 12

      v.   The class's reaction to the settlement................................................................ 13

   b.  The Court Should Certify the Settlement Class for Settlement Purposes........................ 13

   c.  The Court Should Find the Notice Program Satisfied Rule Due Process........................ 14

V.    PLAINTIFFS RENEW THEIR PETITION FOR ATTORNEYS' FEES, COSTS, AND
      SERVICE AWARDS.............................................................................................. 15

VI.   CONCLUSION....................................................................................................... 16

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Amchem Prods. v. Windsor*,
    521 U.S. 591 (1997) ................................................................................................ 15

*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*,
    222 F.3d 52 (2d Cir. 2000) ........................................................................................ 7

*Beckman v. KeyBank, N.A.*,
    293 F.R.D. 467 (S.D.N.Y. 2013) .............................................................................. 12

*Brady v. Due N. Holdings, LLC*,
    No. 17-cv-1313 (S.D. Ind. Oct. 16, 2018) ............................................................... 13

*Castagna v. Madison Square Garden, L.P.*,
    No. 09-cv- 10211 (LTS)(HP), 2011 U.S. Dist. LEXIS 64218, 2011 WL 2208614 (S.D.N.Y.
    June 7, 2011) .............................................................................................................. 9

*Chang v. Philips Bryant Park LLC*,
    No. 17 Civ. 8816 (LTS) (SLC), 2019 U.S. Dist. LEXIS 185297, 2019 WL 8105999 (S.D.N.Y.
    Oct. 23, 2019) ............................................................................................................ 6

*Cohen v. J.P. Morgan Chase & Co.*,
    262 F.R.D. 153 (E.D.N.Y 2009) ............................................................................ 6, 7

*Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons, Inc.*,
    502 F.3d 91 (2d Cir. 2007) ........................................................................................ 7

*D'Amato v. Deutsche Bank*,
    236 F.3d 78 (2d Cir. 2007) ........................................................................................ 9

*Desue v. 20/20 Eye Care Network, Inc.*,
    No. 21-CIV-61275-RAR, 2023 U.S. Dist. LEXIS 117355 (S.D. Fla. July 8, 2023) ........... 6, 10

*Dornberger v. Metropolitan Life Ins.*,
    203 F.R.D. 118 (S.D.N.Y. 2001) .............................................................................. 12

*Fulton-Green v. Accolade, Inc.*,
    2019 U.S. Dist. LEXIS 164375 (E.D. Pa. Sep. 23, 2019) ....................................... 10

*Hammond v. The Bank of N.Y. Mellon Corp., No. 08 Civ. 6060 (RMB)(RLE)*,
    2010 WL 2643307 (S.D.N.Y. June 25, 2010) .......................................................... 11

*In re Bear Stearns Cos., Inc. Sec., Derivative and ERISA Litig.*,
    909 F. Supp. 2d 259 (S.D.N.Y. 2012) ...................................................................... 14

*In re Canon United States Data Breach Litig.*,
   No. 20-CV-6239-AMD-SJB, 2023 U.S. Dist. LEXIS 206513 (E.D.N.Y. Nov. 15, 2023) ....... 13

*In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*,
   No. 3:08-MD-01998, 2010 U.S. Dist. LEXIS 87409, 2010 WL 3341200 (W.D. Ky. Aug. 23,
   2010) ....................................................................................................................................... 6, 10

*In re Currency Conversion Fee Antitrust Litig.*, 263 F.R.D. 110 (S.D.N.Y. 2009), *aff'd*,
   *Priceline.com, Inc. v. Silberman*, 405 F. App'x 532 (2d Cir. 2010 ............................................. 8

*In re Currency Conversion Fee Antitrust Litig.*,
   263 F.R.D. 110 (S.D.N.Y. 2009), *aff'd*, *Priceline.com, Inc. v. Silberman*, 405 F. App'x 532 (2d
   Cir. 2010) ...................................................................................................................................... 8

*In re Facebook, Inc., IPO Secs. & Deriv. Litig.*, 343 F. Supp. 3d 394 (S.D.N.Y. 2018)................. 9

*In re GSE Bonds Antitrust Litig.*,
   414 F. Supp. 3d 686 (S.D.N.Y. 2019) ........................................................................................... 9

*In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*,
   293 F.R.D. 21 (D. Me. 2013) ........................................................................................................ 11

*In re Hudson's Bay Co. Data Sec. Incident Consumer Litig.*,
   No. 18-cv-8472 (PKC), 2022 U.S. Dist. LEXIS 102805 (S.D.N.Y. June 8, 2022) .............. 7, 12

*In re Initial Pub. Offering Sec. Litig.*,
   260 F.R.D. 81 (S.D.N.Y. June 10, 2009)...................................................................................... 6

*In re Interpublic Sec. Litig.*,
   No. 02 Civ. 6527, 2004 WL 2397190 (S.D.N.Y. Oct. 26, 2004) ............................................. 10

*In re Lloyd's Am. Trust Fund Litig.*,
   No. 96 Civ. 1262, 2002 U.S. Dist. LEXIS 22663, 2002 WL 31663577 (S.D.N.Y. Nov. 26,
   2002) ............................................................................................................................................ 12

*In re Luxottica Group S.p.A. Sec. Litig.*,
   233 F.R.D. 306 (E.D.N.Y. 2006)................................................................................................. 6

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*,
   163 F.R.D. 200 (S.D.N.Y. 1995).................................................................................................. 14

*In re Sonic Corp. Customer Data Sec. Breach Litig.*,
   No. 1:17-md-2807, 2019 U.S. Dist. LEXIS 135573 (N.D. Ohio Aug. 12, 2019) ................... 10

*In re Telik*,
   576 F. Supp. 2d 570 (S.D.N.Y. 2008) ......................................................................................... 12

*In re TJX Cos. Retail Sec. Breach Litig.*,
    246 F.R.D. 389 (D. Mass. 2007) ........................................................................ 11

*Reynolds v. Marymount Manhattan Coll.*,
    No. 1:22-CV-06846-LGS, 2023 U.S. Dist. LEXIS 191993 (S.D.N.Y. Oct. 23, 2023)............ 13

*Sewell v. Bovis Lend Lease LMB, Inc.*,
    2012 U.S. Dist. LEXIS 53556 (S.D.N.Y. Apr. 16, 2012) ........................................ 12

*Shapiro v. JPMorgan Chase & Co.*, No. 11 Civ. 8331-CM-MHD, 2014 WL 1224666 (S.D.N.Y.
    Mar. 24, 2014)........................................................................................... 8

*Soler v. Fresh Direct, LLC*,
    2023 U.S. Dist. LEXIS 42647 (S.D.N.Y. Mar. 14, 2023 ........................................ 7

*Stollenwerk v. TriWest Healthcare All.*,
    No. CV–03–0185–PHX–SRB (D. Ariz. June 10, 2008)........................................... 11

*Torretto v. Donnelley Fin. Sols., Inc.*,
    No. 1:20-cv-02667-GHW, 2023 U.S. Dist. LEXIS 5440 (S.D.N.Y. Jan. 5, 2023) ................. 13

*Warren v. Xerox Corp.*,
    No. 01-CV-2909 (JG), 2008 U.S. Dist. LEXIS 73951 (E.D.N.Y. Sep. 19, 2008) .................. 12

*Willix v. Healthfirst, Inc.*,
    No. 07–cv–1143, 2011 WL 754862 (E.D.N.Y. Feb. 18, 2011) .................................. 10

**Rules**

Federal Rules of Civil Procedure, Rule 12 ..................................................... 3

## I.    INTRODUCTION

The Court should approve the parties' settlement under Rule 23. The Court preliminary approved the settlement as "fair, reasonable, and adequate" on April 22, 2024. Dkt. 64 at 3; see also Dkt. 75. Notice has been disseminated to 96.4% of the class, no class members objected or opted-out, 579 claims have been filed (though the claims deadline isn't until August 20, 2024), and this Court should finally approve the settlement.

This case arises out of a security incident where the personal identifiable information ("PII" or "Private Information") of approximately 13,882 of Defendant Baldor Specialty Foods, Inc.'s current and former employees was compromised, exposing Plaintiffs and Settlement Class Members to harm. Plaintiffs sued, alleging that Baldor violated its duty to protect their Private Information, and Baldor responded by moving to dismiss, denying liability. The Court denied Baldor's motion to dismiss in part and, due to the risks that existed with continued litigation, the parties agreed to discuss early resolution.

After a lengthy and vigorous period of negotiations, where multiple demands and counters were exchanged, the parties agreed to key terms and then diligently negotiated and prepared a Settlement Agreement that is fair, adequate, and reasonable. *See* Dkt. 63-1 ("Settlement Agreement" or "S.A."). Under the Settlement Agreement, Defendant will establish a $550,000 non-reversionary Settlement Fund that secures significant benefits for the Settlement Class, including a $100 pro rata cash payment, three-year three-bureau credit monitoring, and reimbursement for out-of-pocket expenses and lost time up to $150 (6 hours at $25/hour). The Class has reacted positively to this settlement, with a 4% claims rate thus far, and no objections or opt-outs. As a result, the Settlement satisfies Rule 23(e) and should receive final approval.

## II.    THE SETTLEMENT

The Settlement's details are contained in the Settlement Agreement the Parties executed on April 15, 2024. Dkt. 63-1. The Settlement Agreement provides for excellent benefits and the $550,000 Settlement Fund will cover all costs of notice and claims administration, attorneys' fees and costs, and service awards to Plaintiffs. *Id*. ¶62. Specifically, the Settlement provides five key benefits to Settlement Class members: (1) payments up to $10,000.00 for unreimbursed economic losses incurred as a result of the Data Incident, such as significant losses associated with identity theft or fraud; (2) payments for time spent mitigating the effects of the Data Incident up to six hours at $25.00 per hour (capped at $150.00); (3) three years of three-bureau credit monitoring services with $1 million in identity theft insurance; (4) a pro rata cash payment of $100.00 in the alternative to claims for unreimbursed economic losses, lost time, and/or credit monitoring; and (5) Baldor confirmation that it made significant information security improvements at great cost, which were paid separate and apart from all other settlement benefits and the Settlement Fund. *Id*.

The Settlement Agreement provides immediate and guaranteed benefits to the Settlement Class, thus, the Court should certify the Settlement Class and approve the settlement under Rule 23 so the parties may deliver those benefits.

## III.    BACKGROUND

### a.    Defendants' Data Breach and Plaintiffs' Claims

Baldor is one of the largest importers and distributors of fresh produce and specialty foods in the Northeast and Mid-Atlantic regions of the United States. Dkt. 33 ("SAC") ¶2. Baldor is based in the Bronx in New York. *Id.* ¶10.

In February 2023, Baldor learned that cybercriminals had breached its security systems and compromised employee PII. *Id.* ¶¶20-23. Baldor was unable to detect the hack before it happened,

to stop the hackers from accessing employee PII, or to even know that a hack had even happened for 18 days. *Id*. As a result, Baldor's Data Incident potentially exposed the PII belonging to over 13,000 current and former employees, including Plaintiffs. *Id*. ¶¶31-32, 36, 45-46, 50, 58-59, 63. On April 7, 2023, Baldor began notifying the Settlement Class Members about the Data Incident. *Id*. ¶6. Plaintiffs alleged that Baldor promised to protect its employees' PII, and that they relied on Baldor's explicit and implicit promises when agreeing to their employment and subsequent entrustment of their PII. *Id*. ¶¶16, 35, 49, 62.

### b. Procedural History

Following Defendants' notification to those affected by the Data Incident and an investigation by Settlement Class Counsel, Plaintiffs filed this class action lawsuit against Defendants in this Court on April 28, 2023. Dkt. 1. Plaintiff brought the following claims: negligence, negligence per se, breach of implied contract, breach of fiduciary duty, unjust enrichment, and declaratory judgment.

On May 5, 2023, Plaintiff Eduardo Antonio Jimenez Del Rosario filed his amended class action complaint, naming Jayson Mercado as an additional named Plaintiff. Dkt. 9. On July 12, 2023, Baldor moved to dismiss Plaintiffs' complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), filing and citing to extrinsic evidence. Dkts. 15-18. Plaintiffs moved for jurisdictional discovery on July 26, 2023. Dkts. 21-25. This Court stayed the motion to dismiss pending resolution of the motion for discovery. Dkt. 26. Baldor opposed the motion for discovery on August 3, 2023, Dkt. 27, and Plaintiffs replied on August 7, 2023, Dkt. 28.

While Plaintiffs' motion for discovery was pending, Plaintiffs moved for leave to file a second amended class action complaint to add Taneisha Lewis as an additional named plaintiff. Dkts. 29-30. Baldor opposed that motion for leave on October 6, 2023. Dkt. 31. On October 12,

2023, this Court granted Plaintiffs motion for leave, Dkt. 32, and on that same day, Plaintiffs filed their Second Amended Complaint, Dkt. 33. On October 26, 2023, Baldor filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). Dkts. 35-37. Plaintiffs opposed that motion on November 16, 2023, Dkt. 42, and Baldor replied on December 1, 2023, Dkt. 48. On December 5, 2023, this Court granted in part and denied in part Baldor's motion to dismiss Plaintiffs' Second Amended Complaint. Dkt. 51.

### c.  Arms'-length Negotiations & Preliminary Approval

Considering the risks of continued litigation and all other factors bearing on the merits, the Parties began an arms'-length discussion of settlement of this Litigation. After months of hard-fought negotiations, a term sheet was agreed to by the parties on February 6, 2024, subject to final mutual agreement on all the necessary documentation, and in the weeks that followed, the parties diligently negotiated and prepared the Settlement Agreement, which was finalized and executed on March 22, 2024. Plaintiffs moved for preliminary approval on March 25, 2024, Dkt. 60, the Court held a hearing on that motion on April 8, 2024, and on April 18, 2024, Plaintiffs submitted a supplemental preliminary approval motion and amended settlement agreement reflecting on changes the Court requested at the hearing, Dkt. 63.

On April 22, 2024, the Court preliminarily approved the parties' settlement as "fair, reasonable, and adequate." Dkt. 64 at 3; *see also* Dkt. 75. In so doing, it found that plaintiffs "will likely be able to certify the Settlement Class for purposes of judgment on the Settlement because it meets all of the requirements of Rule 23(a) and the requirements of Rule 23(b)(3). Dkt. 64 ¶1. The Court further appointed Plaintiffs as the Settlement Class Representative and found that Plaintiffs' Counsel "will likely satisfy the requirements of Rule 23(e)(2)(A) and should be appointed as Class Counsel pursuant to Rule 23(g)(1)." *Id.* ¶2.

### d. Notice Program & Claims Activity

On April 11, 2024, Defendant provided Simpluris with the contact information for 13,882 Class Members. Leung Decl. ¶4. After Simpluris cleaned the contact information, removing duplicates and updating addresses, it sent Postcard Notice (*id*. Ex. A) via U.S. First Class Mail to 13,863 Class Members on May 22, 2024. *Id*. ¶5-6. There were 1,691 returned Postcard Notices, but Simpluris was able to forward and resend Postcard Notices to 1,216 of these Class Members. *Id*. ¶6. Thus, only 475 of Class Members received no notice at all—96.4% of Class Members received direct notice of this settlement. *Id*. On July 22, 2024, Simpluris mailed a Reminder Notice (*id*. Ex. B) to 13,068 Class Members who have not yet submitted claims. *Id*. ¶7. The Claims Deadline is August 20, 2024, and as of August 1, 2024, 579 of claims have been submitted. *Id*. ¶10. These claims are still subject to audit and review, but 112 Class Members have claimed credit monitoring and 441 Class Members have claimed the alternative cash payment. *Id*. As of August 1, 2024, no opt-out requests and no objections have been made by Class Members. *Id*. ¶¶11-12. The deadline to opt-out and object has passed. Id.

Simpluris also established a settlement website and toll-free telephone line that have been frequently used and visited. *Id*. ¶¶8-9. The website, in particular, contained up-to-date information on the pleadings in this case and the date, time, and location of the Final Approval Hearing, as well as an online claim form module. *Id*. ¶8.

## IV.    ARGUMENT

### a. The Court Should Approve the Settlement Under Rule 23 and the Grinnell Factors

Courts encourage parties to settle class actions given their potential for costs, delays, complexity, and risks: "Class action suits readily lend themselves to compromise because of the

difficulties of proof, the uncertainties of the outcome, and the typical length of the litigation. There is a strong public interest in quieting any litigation; this is 'particularly true in class actions.'" *In re Luxottica Group S.p.A. Sec. Litig.* (*In re Luxottica Group Litig.*), 233 F.R.D. 306, 310 (E.D.N.Y. 2006); *see also Cohen v. J.P. Morgan Chase & Co.*, 262 F.R.D. 153, 157 (E.D.N.Y 2009) ("There is a strong judicial policy in favor of settlement, particularly in the class action context. The compromise of complex litigation is encouraged by the courts and favored by public policy."). Data breach cases are some of the most risky, and is why courts favor settling these cases. *See, e.g., Desue v. 20/20 Eye Care Network, Inc.*, No. 21-CIV-61275-RAR, 2023 U.S. Dist. LEXIS 117355, at *24 (S.D. Fla. July 8, 2023); *In re Countrywide Fin. Corp. Customer Data Sec. Breach Litig.*, No. 3:08-MD-01998, 2010 U.S. Dist. LEXIS 87409, 2010 WL 3341200, at *6 (W.D. Ky. Aug. 23, 2010).

Courts approve settlements under these principles in two steps. First, the "preliminary stage," which the parties completed when this Court granted preliminary approval in April. *Chang v. Philips Bryant Park LLC*, No. 17 Civ. 8816 (LTS) (SLC), 2019 U.S. Dist. LEXIS 185297, 2019 WL 8105999, at *7 (S.D.N.Y. Oct. 23, 2019). Second, after the parties notify the class, the Court must decide whether to "finally" approve the settlement under precedent and Rule 23.

The Second Circuit has developed factors governing whether to approve settlements, and this settlement meets them. Those factors are: (i) the case's complexity and "likely duration;" (ii) how the class has reacted to settlement; (iii) the case's litigation stage; (iv) the case's risks in proving liability; (v) the risks in proving damages; (vi) the risks in maintaining a case through trial; (vii) defendant's ability to pay a "greater judgment;" (viii) the "range of reasonableness" for the case. *In re Initial Pub. Offering Sec. Litig.*, 260 F.R.D. 81, 88 (S.D.N.Y. June 10, 2009) (citing *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974). Altogether, those factors determine

whether the settlement results from "serious, informed, non-collusive ('arm's length') negotiations, where there are no grounds to doubt its fairness and no other obvious deficiencies." *See Cohen*, 262 F.R.D. at 157.

Rule 23 lists its own criteria for approving settlements, but Rule 23's factors do not supplant the *Grinnell* factors. *Soler v. Fresh Direct, LLC*, 2023 U.S. Dist. LEXIS 42647, at *8 (S.D.N.Y. Mar. 14, 2023) ("This [Rule 23] inquiry overlaps with the *Grinnell* factors"). Instead, Rule 23's criteria focuses "the court and the lawyers on the core concerns of procedure and substance" under four factors: (i) "adequacy of representation;" (ii) whether there were "arm's length" negotiations; (iii) "adequacy of relief;" and (iv) equity between class members. *Id.*; *see also* Rule 23(e). Specifically, within the third factor, "adequacy of relief," the Court considers the case's risks, how the parties propose distributing relief, attorney's fees terms, and any other agreements impacting settlement. *Id.*

Because the *Grinnell* and Rule 23(e) factors "overlap," plaintiffs condense their analysis below to reflect that principle. *Soler*, 2023 U.S. Dist. LEXIS 42647, at *8 (applying a condensed analysis); *In re Hudson's Bay Co. Data Sec. Incident Consumer Litig.*, No. 18-cv-8472 (PKC), 2022 U.S. Dist. LEXIS 102805, at *28 (S.D.N.Y. June 8, 2022) (same).

### i. Plaintiffs and counsel represented the class "adequately"

The settlement satisfies Rule 23(e)(2)(A) because Plaintiffs and their counsel represented the class "adequately" when negotiating it. Meeting this factor entails determining whether Plaintiffs' interests are "antagonistic" to class members' interests and whether Plaintiffs' counsel is qualified and experienced in the litigation. *Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 99 (2d Cir. 2007) (quoting *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000)). Plaintiffs have satisfied this inquiry.

There is no antagonism between Plaintiffs, their counsel, and the Settlement Class because Plaintiffs are accepting the same relief on the same terms as all other Settlement Class Members. Although they request a service award, such an award is not guaranteed, and the class will receive the settlement's benefits no matter how the Court rules on Plaintiffs' request. Plaintiffs helped their attorneys investigate the breach, supplied the facts supporting their complaint, provided information in advance of mediation, and were available throughout the mediation and settlement process to answer questions and represent the interests of the Settlement Class. Dkts. 67, 68, 69. What's more, Plaintiffs and their counsel withheld negotiating attorneys' fees and costs and a service award until after the parties agreed on the settlement's core terms applicable to the class, thus removing any conflict that may result from concurrent negotiations. Dkt. 62 ("Borrelli Decl.") ¶10.

Plaintiffs' counsel also has the experience needed to represent the Settlement Class and secure relief. *Id.* ¶¶25-34. Counsel has represented data breach victims across the country and reached settlements that courts routinely approve. And that experience served Plaintiffs and the class considering the results achieved in the settlement. *See In re Currency Conversion Fee Antitrust Litig.*, 263 F.R.D. 110, 122 (S.D.N.Y. 2009), *aff'd, Priceline.com, Inc. v. Silberman*, 405 F. App'x 532 (2d Cir. 2010) (noting "extensive" experience of counsel in granting final approval); *see also Shapiro v. JPMorgan Chase & Co*., No. 11 Civ. 8331-CM-MHD, 2014 WL 1224666, at *2 (S.D.N.Y. Mar. 24, 2014) (giving "great weight" to experienced class counsel's opinion that the settlement was fair). At all times, Class Counsel was fully informed about the facts, risks, and challenges of this action and had a sufficient basis on which to negotiate a very significant settlement. As a result, the Court should find Plaintiffs have satisfied this factor.

ii.   The Court should presume the Settlement is "approvable"

To achieve the "fairness" that Rule 23(e)(2)(B) demands, plaintiffs must show their proposal was negotiated at "arm's length." If a class settlement is reached through arm's-length negotiations between experienced, capable counsel knowledgeable in complex class litigation, "the Settlement will enjoy a presumption of fairness." *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 693 (S.D.N.Y. 2019); *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 173-74 (S.D.N.Y. 2000); *In re Facebook, Inc., IPO Secs. & Deriv. Litig.*, 343 F. Supp. 3d 394, 408 (S.D.N.Y. 2018). That presumption applies here.

As detailed above, Plaintiffs' counsel litigates privacy cases like data breaches in state and federal actions, meaning they understand how this settlement compares to other data breach settlements. Borrelli Decl. ¶17. This allowed Plaintiff's counsel to evaluate the value of this case, including the risks of proceeding in litigation compared to the relief that could be achieved. Armed with this knowledge, Plaintiff's counsel negotiated the Settlement terms with opposing counsel, who are also experienced and capable counsel knowledgeable in complex class litigation.

Although the parties settled this matter before formal discovery started, that is no bar to approving their agreement's terms as Plaintiffs' counsel insisted on, and received, pre-mediation discovery. *D'Amato v. Deutsche Bank*, 236 F.3d 78, 87 (2d Cir. 2007) ("although no formal discovery had taken place, the parties had engaged in an extensive exchange of documents and other information"); *Castagna v. Madison Square Garden, L.P.*, No. 09-cv- 10211 (LTS)(HP), 2011 U.S. Dist. LEXIS 64218, 2011 WL 2208614, *6 (S.D.N.Y. June 7, 2011) (counsel had "completed enough investigation to agree on a reasonable settlement" even without discovery). Indeed, the "pertinent question" is not whether Plaintiffs conducted Rule 26 discovery, but "whether counsel had an adequate appreciation of the merits of the case before negotiating." *Willix v. Healthfirst,*

*Inc.*, No. 07–cv–1143, 2011 WL 754862, at *4 (E.D.N.Y. Feb. 18, 2011). Because Plaintiffs gathered the facts needed before mediating, they understood the landscape affecting settlement just as if they had conducted discovery. Moreover, early settlement where, as here, the Parties are adequately informed to negotiate is to be commended. *Castagna v. Madison Square Garden, L.P.*, 2011 WL 2208614, at *6 (S.D.N.Y. June 7, 2011) (commending plaintiffs' attorneys for negotiating early settlement and avoiding hundreds of hours in legal fees); *In re Interpublic Sec. Litig.*, No. 02 Civ. 6527, 2004 WL 2397190, *12 (S.D.N.Y. Oct. 26, 2004) (early settlements should be encouraged when warranted by the circumstances of the case).

For these reasons, the court should find Plaintiffs have satisfied this factor and the third *Grinnell* factor.

iii.   The Settlement's relief is "adequate" considering this case's complexity and risks and the relief this settlement achieves

Without settling, this case faced risks that would have delayed or doomed Plaintiffs' chances at recovery. Almost "all class actions involve a high level of risk, expense, and complexity." *Desue*, 2023 U.S. Dist. LEXIS 117355, at *24. And this is not only a "complex" case—"it lies within an especially risky field of litigation: data breach." *Id*. This is why courts favor settling breach cases, as "proceeding through the litigation process . . . is unlikely to produce the plaintiffs' desired results." *In re Countrywide*, 2010 U.S. Dist. LEXIS 87409, 2010 WL 3341200, at *6; *see, e.g., In re Sonic Corp. Customer Data Sec. Breach Litig.*, No. 1:17-md-2807, 2019 U.S. Dist. LEXIS 135573, at *13 (N.D. Ohio Aug. 12, 2019) ("[D]ata breach litigation is complex and largely undeveloped."); *Fulton-Green v. Accolade, Inc.*, 2019 U.S. Dist. LEXIS 164375, at *21 (E.D. Pa. Sep. 23, 2019) ("This is a complex case in a risky field of litigation because data breach class actions are uncertain and class certification is rare.").

To start, data breach cases do not always clear the motion-to-dismiss stage. *See, e.g., Hammond v. The Bank of N.Y. Mellon Corp., No. 08 Civ. 6060 (RMB)(RLE)*, 2010 WL 2643307, at *1 (S.D.N.Y. June 25, 2010) (collecting dismissed data breach cases at the Rule 12(b)(6) stage). And when they do, courts will still sometimes dismiss them at summary judgment or refuse to certify them. *See In re TJX Cos. Retail Sec. Breach Litig.*, 246 F.R.D. 389, 397 (D. Mass. 2007) (refusing to certify data breach class action); *Stollenwerk v. TriWest Healthcare All.*, No. CV–03–0185–PHX–SRB, Slip Op. at 5–6 (D. Ariz. June 10, 2008) (same); *In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*, 293 F.R.D. 21 (D. Me. 2013) (same). Although Plaintiffs believe they would have overcome these hurdles given the facts in issue, they presented risks that justified settling at this stage.

Moreover, to justify taking this case to trial, Plaintiffs would need to clear these hurdles and achieve a better result when there are no grounds to believe trial would yield one. The Court and parties cannot estimate the upside in litigating this case through to trial because breach victims have yet to try a case, so there is no verdict to measure their result against. There is no evidence Defendant could "withstand a greater judgment," nor would that factor defeat settlement if it could. *See In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d at 178 n.9 ("ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair."). Nor is this case the right candidate for trial given the relief the Agreement delivers. Again, the Agreement achieves what Plaintiffs wanted in their complaint—compensation for their and the class's losses. There is no reason to risk losing recovery entirely by refusing to settle on those terms.

Last, Plaintiffs timely petitioned (and are simultaneously with this filing, renewing that request, *see* Doc. 71) the Court to approve their attorneys' fees, costs, and award requests (Docs. 65-69), all of which fall within what district courts approve. *See Warren v. Xerox Corp.*, No. 01-

CV-2909 (JG), 2008 U.S. Dist. LEXIS 73951, at *22 (E.D.N.Y. Sep. 19, 2008) (awarding class counsel attorneys' fees and expenses at 33.33 percent of the total settlement value, and finding such a sum "comparable to sums allowed in other cases"); *In re Telik*, 576 F. Supp. 2d 570, 590 (S.D.N.Y. 2008) ("[i]n contingent litigation, lodestar multiples of over 4 are routinely awarded by courts") (citation omitted) *Sewell v. Bovis Lend Lease LMB, Inc.*, 2012 U.S. Dist. LEXIS 53556, at *13 (S.D.N.Y. Apr. 16, 2012) ("Courts commonly award lodestar multipliers between two and six.") (citations omitted)); *In re Lloyd's Am. Trust Fund Litig.*, No. 96 Civ. 1262, 2002 U.S. Dist. LEXIS 22663, 2002 WL 31663577, at *27 (S.D.N.Y. Nov. 26, 2002) (a "multiplier of 2.09 is at the lower end of the range of multipliers awarded by courts within the Second Circuit" (citation omitted)); *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 481-83 (S.D.N.Y. 2013) (granting an award of $5,000 to $7,500 to Plaintiffs); *Dornberger v. Metropolitan Life Ins.*, 203 F.R.D. 118 (S.D.N.Y. 2001) (noting in class actions representative plaintiff awards from $2,500 to $85,000 are commonly accepted).

As a result, the Court should find this factor and the first, fourth, fifth, and sixth *Grinnell* factors support approval.

        iv.   <u>The Settlement treats class members equitably and is within the "range of reasonableness"</u>

The results the Settlement secures exceeds those won in other data breach settlements. Indeed, this Settlement provides all Class Members with an "alternative cash payment" of $100.00 (subject to a pro rata increase or decrease) that they can claim without needing to prove any monetary losses. *See In re Hudson's Bay Co. Data Sec. Incident Consumer Litig.*, No. 18-cv-8472 (PKC), 2022 U.S. Dist. LEXIS 102805, at *29-30 (S.D.N.Y. June 8, 2022) ("Comparable data-breach cases have provided lower settlement payments to class members, with relief that includes

a payment of $10 or merchant coupons"); *In re Canon United States Data Breach Litig.*, No. 20-CV-6239-AMD-SJB, 2023 U.S. Dist. LEXIS 206513, at *14 (E.D.N.Y. Nov. 15, 2023) (reimbursing out-of-pocket losses and offering credit monitoring, but no cash payments); *Brady v. Due N. Holdings, LLC*, No. 17-cv-1313, Doc. No. 59, at 4 & Doc. No. 65, at 2 (S.D. Ind. Oct. 16, 2018) (same); *Torretto v. Donnelley Fin. Sols., Inc.*, No. 1:20-cv-02667-GHW, 2023 U.S. Dist. LEXIS 5440, at *5 (S.D.N.Y. Jan. 5, 2023) (same); *Reynolds v. Marymount Manhattan Coll.*, No. 1:22-CV-06846-LGS, 2023 U.S. Dist. LEXIS 191993, at *6 (S.D.N.Y. Oct. 23, 2023) (same). This is not to mention that all Class Members may also claim compensation for out-of-pocket losses, lost time, and credit monitoring. S.A. ¶52.

      v.  <u>The class's reaction to the settlement</u>

It is "well-settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy." *Maley v. Del Glob. Techs. Corp.,* 186 F. Supp. 2d 358, 362 (S.D.N.Y. 2002); *Grinnell*, 495 F.2d at 462-63. The Class's reaction to the Settlement has been resoundingly positive. As of August 1, 2024, there have been no opt-outs or objections and 579 claims have been filed. Leung Decl. ¶¶10-12. There is no evidence the Settlement Class disapproves of the Settlement in any way, and as a result, "the reaction of the class to the settlement also weighs in favor of final approval of the Settlement Agreement." *In re Nano-X Sec. Litig.,* No. 21-CV-5517 (RPK) (PK), 2024 U.S. Dist. LEXIS 71340, at *10 (E.D.N.Y. Apr. 17, 2024).

**b.  The Court Should Certify the Settlement Class for Settlement Purposes**

Certifying a settlement class "has been recognized throughout the country as the best, most practical way to effectuate settlements involving large numbers of claims by relatively small claimants." *Meredith Corp. v. SESAC, LLC*, 87 F. Supp. 3d 650, 658 (S.D.N.Y. 2015) (quoting *In*

*re Prudential Sec. Inc. Ltd. P'ships Litig.*, 163 F.R.D. 200, 205 (S.D.N.Y. 1995)). The Court certified the Settlement Class in its preliminary approval order and the reasons justifying the order have not changed. *See* Dkts. 64/75. For that reason, the Court can rely on its order without analyzing Rule 23's factors again. *See In re Bear Stearns Cos., Inc. Sec., Derivative and ERISA Litig.*, 909 F. Supp. 2d 259, 264 (S.D.N.Y. 2012) (finally approving settlement where there "have been no material changes to alter the proprietary of [the court's] findings" at the preliminary approval stage).

For completeness, the Court certified the Class for four reasons. First, it found the Settlement Class was "numerous" because "joinder of all Settlement Class Members would be impracticable[.]" Dkt. 64 ¶1. There are still approximately 13,382 Settlement Class Members, and 96.4% of them were directly notified of this Settlement, and so the facts supporting this finding have not changed. Second, Plaintiffs are adequate Settlement Class Representatives, having experienced the same injuries as the rest of the Settlement Class stemming from the Security Incident. Moreover, Settlement Class Counsel is adequate as they are experienced in data breach class action litigation. Third, typicality and commonality remain the same, as the same issues that affect Plaintiffs affect the Settlement Class, and those issues have not changed. And fourth, all of the common issues impacting the Settlement Class predominate over any as-of-yet-unidentified "individualized" issues. As a result, the Court should apply the same analysis it applied in its preliminary approval order to certify the Settlement Class under Rule 23.

### c. The Court Should Find the Notice Program Satisfied Rule Due Process

The Court should approve the notice program because it succeeded. Settlement Class Members are entitled to the "best notice that is practicable under the circumstances" of any proposed settlement before it is finally approved by the Court. Fed. R. Civ. P. 23(c)(2)(B). "The

notice may be by one or more of the following: United States mail, electronic means, or other appropriate means." *Id*. To comply with due process, notice must be "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." *Amchem Prods. v. Windsor*, 521 U.S. 591, 617 (1997). Notice must explain: (i) the action; (ii) how the class is defined; (iii) the class claims, issues, or defenses; (iv) that a class member appear through an attorney; (v) that the court will exclude from the class any member who requests it; (vi) the time and manner for requesting exclusion; and (vii) the binding effect that class judgment has on members. Fed. R. Civ. P. 23(c)(2)(B).

As discussed above, Simpluris sent direct notice via U.S. First Class Mail to 96.4% of the Settlement Class. Additionally, the Settlement Website and telephone line maintained by Simpluris provided the Settlement Class with ample opportunity to obtain information about the Settlement and file a claim. As a result, the notice program here satisfies due process. It was the "best notice that [was] practicable under the circumstances" and succeeded at what it aimed to do. Fed. R. Civ. P. 23(c).

## V.    PLAINTIFFS RENEW THEIR PETITION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS

Pursuant to this Court's preliminary approval order, Class Counsel filed their Motion for Attorneys' Fees, Reimbursement of Litigation Expenses, and Class Representatives Service Award on July 8, 2024, (Dkts. 65-69), which was 14 days before the Objection and Opt-Out Deadlines of July 21, 2024, (Dkt. 64 at 9; Dkt. 75). On July 18, 2024, this Court denied this motion without prejudice because it was "premature in advance of final approval of the settlement." Dkt. 71. Instead, the Court requested that the fee motion "be renewed with the motion for final approval." *Id*. Because the parties now seek final approval, Plaintiffs are refiling and renewing their fee

motion simultaneous with this filing with the changes requested by the Court. Plaintiffs request that their renewed motion be granted, awarding 33.33% of the Common Fund, or $183,333.33 as attorneys' fees, along with $3,832.03 in expenses, and awarding $5,000 for each of the three Plaintiffs for their work as Class Representatives.

## VI.    CONCLUSION

For the reasons above, the Court should finally approve the parties' settlement, certify the Settlement Class, and enter the proposed final approval order.


Dated: August 6, 2024               By: */s/ Brittany Resch*
                                        Brittany Resch (*pro hac vice*)
                                        Raina C. Borrelli (*pro hac vice*)
                                        STRAUSS BORRELLI PLLC
                                        One Magnificent Mile
                                        980 N. Michigan Avenue, Suite 1610
                                        Chicago IL, 60611
                                        Telephone: (872) 263-1100
                                        Facsimile: (872) 263-1109
                                        bresch@straussborrelli.com
                                        raina@straussborrelli.com

                                        James J. Bilsborrow (NY Bar # 519903)
                                        WEITZ & LUXENBERG, PC
                                        700 Broadway
                                        New York, NY  10003
                                        Telephone: (212) 558-5500
                                        jbilsborrow@weitzlux.com

                                        *Attorneys for Plaintiff and the Proposed Class*

## **<u>CERTIFICATE OF SERVICE</u>**

I, Brittany Resch, hereby certify that on August 6, 2024, I electronically filed the foregoing

with the Clerk of the Court using the CM/ECF system, which will send notification of such filing

to counsel of record, below, via the ECF system.

DATED this 6th day of August, 2024.

STRAUSS BORRELLI PLLC

By:  *<u>/s/ Brittany Resch</u>*
Brittany Resch
STRAUSS BORRELLI PLLC
One Magnificent Mile
980 N. Michigan Avenue, Suite 1610
Chicago IL, 60611
Telephone: (872) 263-1100
Facsimile: (872) 263-1109
bresch@straussborrelli.com