**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| EDUARDO ANTONIO JIMENEZ DEL ROSARIO, JAYSON MERCADO, and TANEISHA LEWIS, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> BALDOR SPECIALTY FOODS, INC., <br><br> Defendant. | Case No. 1:23-cv-03580 <br><br> Judge Alvin K. Hellerstein |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF
RENEWED MOTION FOR AWARD OF ATTORNEYS' FEES,
REIMBURSEMENT OF EXPENSES, AND SERVICE AWARDS**

## TABLE OF CONTENTS

I.    INTRODUCTION ........................................................................................................... 1

II.   FACTUAL AND PROCEDURAL BACKGROUND ........................................................ 3

III.  SUMMARY OF SETTLEMENT ................................................................................... 5

    A.   The Settlement Class.......................................................................................... 5

    B.   Settlement Benefits ............................................................................................ 5

        i.    Compensation for Unreimbursed Economic Losses ................................ 5

        ii.   Lost Time ................................................................................................ 6

        iii.  Credit Monitoring.................................................................................... 6

        iv.   Cash Compensation ................................................................................. 7

        v.    Additional Security Measures ................................................................. 7

        vi.   Costs of Notice and Settlement Administration ...................................... 7

    C.   Costs of Notice and Settlement Administration, Attorneys' Fees, Costs, and Expenses, and Service Awards.......................................................................................... 7

IV.   LEGAL STANDARD .................................................................................................... 8

V.    ARGUMENT................................................................................................................ 11

    A.   Class Counsel's Fee Request Should Be Granted............................................. 11

        i.    The Time and Labor Expended ............................................................. 11

        ii.   The Magnitude and Complexity of the Litigation................................. 14

        iii.  The Risk of Litigation ........................................................................... 15

        iv.   The Quality of Representation ............................................................... 17

        v.    The Requested Fee in Relation to the Settlement.................................. 17

        vi.   Public Policy Considerations................................................................. 18

        vii.  Fee Request in Comparison to Similar Settlements .............................. 19

    B.   Class Counsel's Requested Expenses are Reasonable ...................................... 21

C.    Plaintiffs' Requested Service Award is Justified and Should be Approved ...................... 22

VI.  CONCLUSION .................................................................................................................... 23

# TABLE OF AUTHORITIES

**Cases**

*Attorneys' Fees in Class Actions: 2009-2013*,
    92 N.Y.U. L. Rev. 937, 952 (2018) ........................................................................ 19

*Beckman v. KeyBank, N.A.*,
    293 F.R.D. 467, 481-83 (S.D.N.Y. 2013) ................................................... 14, 21, 22

*Boeing Co. v. Van Gemert*,
    444 U.S. 472 (1980) ............................................................................................... 8

*Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*,
    504 F.3d 229, 249 (2d Cir. 2007) ....................................................................... 18

*Chatelain v. Prudential-Bache Sec.*,
    805 F. Supp. 209, 214 (S.D.N.Y. 1992) ............................................................... 16

*City of Birmingham Ret. & Relief Sys. v. Credit Suisse Grp. AG*,
    2020 U.S. Dist. LEXIS 237595 (S.D.N.Y. Dec. 17, 2020) ........................ 19, 20, 21

*Cohan v. Columbia Sussex Mgmt., LLC*,
    No. CV 12-3203 (AKT), 2018 U.S. Dist. LEXIS 170192 (E.D.N.Y. Sep. 28, 2018) .............. 19

*Culbertson et al v. Deloitte Consulting LLP*,
    No. 1:20-cv-03962-LJL (S.D.N.Y. Feb. 16, 2022) ................................................. 20

*Dornberger v. Metropolitan Life Ins. Co.*,
    203 F.R.D. 118 (S.D.N.Y. 2001) ......................................................................... 22

*Flores v. Don Roberto Jewelers, Inc.*,
    No, 30-2021-01212035-CU-NP-CXC (Cal. Sup. Ct., Orange Cty. July 20, 2023) ................. 20

*Fox v. Vice*,
    563 U.S. 826, 838 (2011) ...................................................................................... 13

*Frank v. Eastman Kodak Co.*,
    228 F.R.D. 174, 186 (W.D.N.Y. 2005) ............................................................. 16, 18

*Goldberger v. Integrated Res. Inc.*,
    209 F.3d 43, 48-49 (2d Cir. 2000) ............................................................ 10, 11, 13, 19

*Grice v. Pepsi Bevs. Co.*,
    363 F. Supp. 3d 401, 407 (S.D.N.Y. 2019) .......................................................... 19

*Hammond v. Bank of N.Y. Mellon Corp.*,
    2010 U.S. Dist. LEXIS 71996 (S.D.N.Y. June 25, 2010) ...................................... 16

*Hashemi v. Bosley, Inc.*,
No. CV 21-946 PSG (RAOx), 2022 U.S. Dist. LEXIS 119454 (C.D. Cal. Feb. 22, 2022)...... 14

*Henderson V. Kalispell Regional Healthcare*,
No. CDV 19-0761 ........................................................................................................ 20

*In re Air Cargo Shipping Servs. Antitrust Litig.*,
No. 06-MD-1775 (JG) (VVP), 2009 U.S. Dist. LEXIS 88404(E.D.N.Y. Sep. 25, 2009) ........ 20

*In re Citigroup Inc. Bond Litig.*,
988 F. Supp. 2d 371, 379 (S.D.N.Y. 2013) ................................................................ 14

*In re Colgate-Palmolive Co. ERISA Litig.*,
36 F. Supp. 3d 344, 353 (S.D.N.Y. 2014) ................................................................ 13

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*,
2007 U.S. Dist. LEXIS 57918(S.D.N.Y. July 27, 2007)........................................... 10

*In re Gilat Satellite Networks, Ltd.*,
No. CV-02-1510 (CPS)(SMG), 2007 U.S. Dist. LEXIS 68964 (E.D.N.Y. Sep. 18, 2007) ...... 18

*In re Global Crossing Sec. & ERISA Litig.*,
225 F.R.D. 436, 468 (S.D.N.Y. 2004)............................................................. 10, 15

*In re Indep. Energy Holdings PLC Sec. Litig.*,
302 F. Supp. 2d 180, 183 n. 3 (S.D.N.Y.2003) ....................................................... 21

*In re Lloyd's Am. Tr. Fund Litig.*,
2002 U.S. Dist. LEXIS 22663 (S.D.N.Y. Nov. 26, 2002)...................................... 9, 13

*In re NASDAQ Mkt.-Makers Antitrust Litig.*,
187 F.R.D. 465, 486 (S.D.N.Y. 1998).................................................................. 20

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
991 F. Supp. 2d 437, 441 (E.D.N.Y. 2014) ............................................................ 16

*In re Polaroid ERISA Litig.*,
2007 U.S. Dist. LEXIS 51983 (S.D.N.Y. July 19, 2007)........................................... 9

*In re Sumitomo Copper Litig.*,
74 F. Supp. 2d 393, 397 (S.D.N.Y. 1999) ............................................................ 9

*In re Telik, Inc. Sec. Litig.*,
576 F. Supp. 2d 570, 592 (S.D.N.Y. 2008) .......................................................... 15

*In re Union Carbide Corp., Consumer Prods. Bus. Sec. Litig.*,
724 F. Supp. 160, 167-168 (S.D.N.Y. 1989) ........................................................ 10

*James v. China Grill Mgmt.*,
 2019 U.S. Dist. LEXIS 72759 (S.D.N.Y. Apr. 30, 2019) ........................................................ 13

*Jermyn v. Best Buy Stores, L.P.*,
 No. 08 Civ. 214 CM, 2012 WL 2505644 (S.D.N.Y. June 27, 2012) ........................................ 16

*Lowe v. NBT Bank*,
 No. 3:19-CV-1400 (MAD/ML), 2022 U.S. Dist. LEXIS 180182 (N.D.N.Y. Sep. 30, 2022)... 18

*Maley v. Del Glob. Techs. Corp.*,
 186 F. Supp. 2d 358, 374 (S.D.N.Y. 2002) ............................................................................ 18

*Massiah v. MetroPlus Health Plan, Inc.*,
 No. 11 Civ. 5669, 2012 WL 5874655 (E.D.N.Y. Nov. 20, 2012) ........................................... 22

*Masters v. Wilhelmina Model Agency, Inc.*,
 473 F.3d 423, 437 (2d Cir. 2007) ............................................................................................ 9

*McDaniel v. Cnty. of Schenectady*,
 595 F.3d 411, 419 (2d Cir. 2010) ............................................................................................ 8

*Phillips Petroleum Co. v. Shutts*,
 472 U.S. 797, 809 (1985) ........................................................................................................ 18

*Precision Assocs. v. Panalpina World Transp., Ltd.*,
 No. 08-cv-42 (JG) (VVP), 2013 U.S. Dist. LEXIS 121795 (E.D.N.Y. Aug. 27, 2013) .......... 20

*Reyes v. City of Rye*,
 2017 U.S. Dist. LEXIS 103096 (S.D.N.Y. June 30, 2017) ..................................................... 19

*Savoie v. Merchants Bank*,
 166 F.3d 456, 460-61 (2d Cir. 1999) ...................................................................................... 10

*Sewell v. Bovis Lend Lease LMB, Inc.*,
 2012 U.S. Dist. LEXIS 53556 (S.D.N.Y. Apr. 16, 2012) ................................................... 9, 13

*Silberblatt v. Morgan Stanley*,
 524 F.Supp.2d 425, 434 (S.D.N.Y. Nov. 19, 2007) ............................................................... 13

*Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*,
 258 F. Supp. 2d 254, 262 (S.D.N.Y. 2003) .............................................................................. 9

*Taft v. Ackermans*,
 2007 U.S. Dist. LEXIS 9144, at *31 (S.D.N.Y. Jan. 31, 2007) ............................................. 17

*Teachers' Ret. Sys. v. A.C.L.N., Ltd.*,
 No. 01-CV-11814(MP), 2004 U.S. Dist. LEXIS 8608 (S.D.N.Y. May 14, 2004) ................... 15

*Third Circuit Task Force*,
   108 F.R.D. 237, 258 ..................................................................................... 10

*Velez v. Majik Cleaning Serv.*,
   2007 U.S. Dist. LEXIS 46223(S.D.N.Y. June 22, 2007) ...................................... 9, 11

*Wal-Mart Stores Inc. v. Visa U.S.A.*,
   396 F.3d 96, 121 (2d Cir. 2005) ........................................................................ 8, 9

*Warren v. Xerox Corp.*,
   No. 01-CV-2909 (JG), 2008 U.S. Dist. LEXIS 73951 (E.D.N.Y. Sep. 19, 2008) ................... 17

**Other Authorities**

*An Empirical Study of Class Action Settlements and Their Fee Award*, 7 J. Empirical Legal Stud.
   811, 838 ....................................................................................................... 19

## I.     INTRODUCTION

Plaintiffs Eduardo Antonio Jimenez Del Rosario, Jayson Mercado, and Taneisha Lewis, submit this Memorandum of Law in Support of Plaintiffs' Renewed Motion for Award of Attorneys' Fees, Reimbursement of Expenses, and Service Awards to Class Representatives.[1] This Court granted Plaintiffs' unopposed motion for preliminary approval of class action settlement on April 22, 2024. Docs. 64/75.

Pursuant to the Settlement Agreement and this Court's preliminary approval order, Class Counsel submitted their Motion for Attorneys' Fees, Reimbursement of Litigation Expenses, and Class Representatives Service Award on July 8, 2024, (Dkts. 65-69), which was 14 days before the Objection and Opt-Out Deadlines of July 21, 2024, (Dkt. 64 at 9; Dkt. 75). On July 18, 2024, this Court denied the July 8 motion without prejudice because it was "premature in advance of final approval of the settlement." Dkt. 71. Instead, the Court requested that the fee motion "be renewed with the motion for final approval." *Id*. The parties have now moved for final approval, and Plaintiffs are refiling and renewing their fee motion with the changes requested by the Court. *See id*. ("The motion also should set out the times and rates of the attorneys and paralegals.").

In February 2023, Defendant Baldor Specialty Foods, Inc. was the victim of a cybercrime (the "Data Incident"), where Plaintiffs allege the personal identifiable information ("PII" or "Private Information") of approximately 13,382 of its current and former employees was potentially exposed.[2] These employees disclosed their Private Information to Baldor trusting that it would protect their information. But when the Data Incident disclosed Plaintiffs' and Settlement Class Members' Private Information to hackers and others, Plaintiffs and Settlement Class

---

[1] Defendant Baldor Specialty Foods, Inc. does not oppose the relief sought in this motion.
[2] All capitalized terms herein are intended to have the same meaning as those in the Settlement Agreement.

Members were exposed to harm. This class action arises out of Defendant's alleged failure to safeguard the Private Information of its current and former employees. Defendant denies all liability and wrongdoing.

After prolonged and extensive arms' length negotiations, the parties reached a settlement that is fair, adequate, and reasonable. Defendant will establish a $550,000 non-reversionary Settlement Fund from which Settlement Class Members may obtain various benefits and which will cover all costs of notice and claims administration as well as attorneys' fees and costs, and any service awards to Plaintiffs. Specifically, the Settlement provides five key benefits to Settlement Class members: (1) payments up to $10,000.00 for unreimbursed economic losses incurred as a result of the Data Incident, such as significant losses associated with identity theft or fraud; (2) payments for time spent mitigating the effects of the Data Incident up to six (6) hours at $25.00 per hour (capped at $150.00); (3) three years of three-bureau credit monitoring services with $1 million in identity theft insurance; (4) in the alternative to claims for unreimbursed economic losses, lost time, and/or credit monitoring, a payment of $100.00; and (5) Baldor has affirmed it made significant information security improvements at great cost, which were paid separate and apart from all other settlement benefits and the Settlement Fund. These are valuable benefits to Settlement Class Members that directly address the harm they suffered as a result of the data breach. This excellent result could not have been obtained absent Class Counsel's efforts on behalf of the Settlement Class.

Class Counsel respectfully submits this Renewed Motion for Award of Attorneys' Fees, Reimbursement of Expenses, and Service Awards for Class Representatives ("Fee Application"). First, Class Counsel requests that the Court award one-third (33.33%) of the Settlement Fund, or $183,333.33, for payment of attorneys' fees, and reimbursement of reasonable litigation expenses

of $3,832.03. This request is well-within the range of fee awards in similar class cases in this Circuit, and, as detailed more fully herein, the factual and legal complexity of these claims required extensive investment of labor and advancement of costs by counsel. The work performed advancing the claims of Settlement Class Members – on a fully contingent basis – carried significant risk, and counsel performing that work, including Class Counsel, forwent other opportunities and dedicated themselves to this case.

In addition, Class Counsel requests that the Court approve a service award for each of the Settlement Class Representatives in the amount of $5,000 per Plaintiff ($15,000 total). This request is modest and is fully justified by the law and the work performed by Plaintiffs. *See* Docs. 67-69.

This Memorandum is supported by the cited and attached evidence, including the Declaration of Brittany Resch, (Doc. 66), the Supplemental Declaration of Brittany Resch filed in support of this renewed motion ("Resch Supp. Decl."), the Declarations of the Settlement Class Representatives, (Docs. 67-69), and the summary time records of Class Counsel, (*see* Doc. 66 and Resch Supp. Decl.). Plaintiffs respectfully request that the Court grant Plaintiffs' Renewed Motion for Award of Attorneys' Fees, Reimbursement of Expenses, and Service Awards.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

In the interest of judicial efficiency, for factual and procedural background on this case, Plaintiffs refer this Court to and hereby incorporate Plaintiffs' Motion for Preliminary Approval of Class Action Settlement filed on March 25, 2024 (Docs. 60, 61, 62), Plaintiffs' supplement thereto (Doc. 63), and the accompanying memorandum and exhibits (including the proposed Settlement Agreement, *see* Doc. 63-1) filed in conjunction therewith.

After Plaintiffs filed the Motion for Preliminary Approval of the Settlement, (Docs. 60-62) the Court held a hearing on April 8, 2024, and requested modifications to the class definition and

the procedure for appointment of a neutral for claims disputes. Plaintiffs filed their supplemental brief on April 18, 2024, Doc. 63, and the Court granted their Motion on April 22, 2024. Docs. 64/75. In the Order, the Court preliminarily certified the Settlement Class, ordered that Notice commence, and set a final approval hearing for August 20, 2024. *Id.* The Court also ordered that Class Counsel's motion for attorneys' fees be filed at least fourteen days prior to the opt-out and objection deadline. Doc. 64 at 9.

Since this Court granted and entered the Preliminary Approval Order, the Parties, in conjunction with the Settlement Administrator, Simpluris, have effectuated Notice consistent with the Settlement and Preliminary Approval Order. Doc. 66 ¶¶8-12. Over the next several weeks and continuing to today, Class Counsel have continued to work with Defendant and the Settlement Administrator regarding claims administration and processing as well as answering class members questions about the settlement and the process. *Id.* ¶9. While the claims process is ongoing, and while Simpluris will submit a detailed declaration about the notice program and claims process in connection with the motion for final approval, preliminary data about the notice and claims process is positive. Through June 28, 2024, 13,863 notices were mailed, 579 claims have been filed, zero Settlement Class Member have requested exclusion and there have been no objections to the Settlement. *Id.* ¶12. The claims period closes on August 20, 2024. *Id.*

Class Counsel's work is not over and will continue throughout the claims period (which ends on August 20, 2024) and final claims adjudication and payments. Based on experience, Class Counsel has spent and will spend substantial additional hours seeking final approval, defending the Settlement from potential objections (of which there are none to date), and supervising claims administration and the distribution of proceeds. *Id.* ¶11.

III.    **SUMMARY OF SETTLEMENT**

A.    **The Settlement Class**

The Settlement provides for the certification of the Settlement Class, defined as "All 13,382 individuals who were given notice by Baldor that their PII was potentially compromised in the Data Incident discovered by Baldor in February 2023." Doc. 63-1 ("S.A.") ¶50. "PII" includes, but is not limited to, names, addresses, dates of birth, Social Security numbers, insurance and other benefits information. *Id*. ¶43. "Data Incident" means the potential unauthorized disclosure of personal information to an unauthorized third party that occurred in approximately February 2023. *Id*. ¶20. And "Participating Settlement Class Member" means a Settlement Class Member who does not submit a valid Request for Exclusion prior to the Opt-Out Deadline. *Id*. ¶39.

B.    **Settlement Benefits**

The Settlement provides Settlement Class Members with timely benefits targeted at remediating the specific harms they have suffered as a result of the Data Incident. The benefits of the Settlement are available to all Settlement Class Members who submit timely and valid claims. Baldor will establish a "Settlement Fund" of five hundred and fifty thousand dollars ($550,000) which will be used to, *inter alia*, satisfy payments to Settlement Class Members, costs of notice, and claims administration. S.A. ¶53, §III. This Settlement Fund will pay for a variety of benefits, which will provide significant and timely relief to Settlement Class Members. *Id*. §IV.

i.    **Compensation for Unreimbursed Economic Losses**

Up to $10,000.00 is available for each Settlement Class Member who submits a timely and valid claim with supporting documentation for unreimbursed ordinary and/or extraordinary economic losses as a result of the Data Incident. *Id*. ¶64(ii). Examples of losses include, without limitation, unreimbursed losses relating to fraud or identity theft; professional fees including attorneys' fees, accountants' fees, and fees for credit repair services; costs associated with freezing

or unfreezing credit with any credit reporting agency; credit monitoring costs that were incurred on or after the Data Incident through the date of claim submission; and miscellaneous expenses such as notary, fax, postage, copying, mileage, and long-distance telephone charges. *Id*.; *see also id*. ¶58. This relief ensures that Settlement Class Members who suffered from significant and unreimbursed economic losses (*e.g.*, identity theft and fraud) will receive meaningful monetary relief.

### ii.    Lost Time

Up to $150.00 per Settlement Class Member who submits a valid and timely claim is available for time spent "mitigating the effects of the Data Incident." *Id*. ¶64(iii). Here, up to six (6) hours can be reimbursed at a rate of $25.00 per hour. *Id*. To be eligible, Settlement Class Members must check a box attesting "that they spent the claimed time responding to issues raised by the Data Incident." *Id*. Claims for Lost Time may be combined with claims for unreimbursed economic losses, but are subject to the $10,000 cap. *Id*. No documentation is required to claim this benefit.

### iii.    Credit Monitoring

In addition to monetary reimbursements, Plaintiffs negotiated for significant additional credit monitoring and identity theft protection. Settlement Class Members are eligible to enroll in three (3) years of three-bureau credit monitoring services with insurance $1 million in identity theft insurance. *Id*. ¶¶19, 64(i). This benefit may be combined with a claim for Unreimbursed Economic Losses and Lost Time, but requires no documentation. *Id*. The Settlement Class Member choosing this benefit will receive a code, which must be timely activated within 180 days. *Id*. No documentation is required to claim this benefit.

#### iv.    Cash Compensation

Up to $100.00 per Settlement Class Member who submits a valid and timely claim is available as cash compensation—as an alternative to making a claim for Unreimbursed Economic Losses, Lost Time, or Credit Monitoring Services. *Id*. ¶64(iv). This amount may increase or decrease *pro rata*. *Id*. No documentation is required to claim this benefit.

#### v.    Additional Security Measures

Baldor has confirmed it has made significant information security improvements since the Data Incident. *Id.* ¶80. Because Baldor is paying for these improvements separate and apart from the Settlement Fund, this relief will not reduce any other relief afforded to the Settlement Class. *Id*. Altogether, these improvements will safeguard the PII Baldor still possesses, including data belonging to Settlement Class Members.

#### vi.    Costs of Notice and Settlement Administration

The Settlement Fund provided by Baldor will pay the entire cost to administer the Settlement, including the Claims Administrator's (Simpluris) costs to notify the Settlement Class and process claims. *Id*. ¶¶62, 74. The estimated cost of notice and administration is $24,215. Doc. 62 ("Borrelli Decl.") ¶13. With the addition of a reminder notice, the estimated cost is $31,152.00. Leung Decl. ¶14 (filed in support of final approval).

**C.    Costs of Notice and Settlement Administration, Attorneys' Fees, Costs, and Expenses, and Service Awards**

The parties did not discuss or agree upon payment of attorneys' fees, costs, and expenses or Plaintiffs' service awards until after they agreed on all material terms of relief to the Settlement Class. Borrelli Decl. ¶10. The $550,000.00 Settlement Fund established by Baldor will be used to pay for any attorneys' fees and costs, and any service award to Plaintiffs to be requested at a later date. S.A. ¶¶98-100.

Subject to Court approval, Plaintiffs sought a Service Award not to exceed $5,000 per Plaintiff ($15,000 total) in their July 8 motion (Docs. 65-69). S.A. ¶98. Settlement Class Counsel filed the applicable motion 14 days before the Opt-Out and Objection Deadlines, and the Court did not order otherwise. *Id*. Additionally, Plaintiffs sought attorneys' fees not to exceed one-third (33.33%) of the Settlement Fund, or $183,333.33, and up to $10,000 for litigation costs and expenses. *Id*. ¶100. Settlement Class Counsel were required to file this motion at least 14 days before the Opt-Out and Objection Deadlines. *Id*. On July 18, 2024, however, this Court denied this motion without prejudice because it was "premature in advance of final approval of the settlement." Dkt. 71. Instead, the Court requested that the fee motion "be renewed with the motion for final approval." *Id*. Plaintiffs hereby submit this renewed motion simultaneously with moving for final approval.

## IV.    LEGAL STANDARD

Plaintiffs' attorneys in a class action lawsuit may petition the Court for compensation relating to any benefits to the Class that result from the attorneys' efforts. *See e.g. Boeing Co. v. Van Gemert,* 444 U.S. 472 (1980). Federal Rule of Civil Procedure 23(h) provides that courts may award "reasonable attorney's fees and nontaxable costs that are authorized by law or the parties' agreement." Fed. R. Civ. P. 23(h). Pursuant to *Boeing*, Courts in the Second Circuit favor the use of the percentage of the settlement approach. *See e.g. Wal-Mart Stores Inc. v. Visa U.S.A.,* 396 F.3d 96, 121 (2d Cir. 2005); *McDaniel v. Cnty. of Schenectady*, 595 F.3d 411, 419 (2d Cir. 2010) ("the percentage method has the advantage of aligning the interests of plaintiffs and their attorneys more fully by allowing the latter to share in both the upside and downside risk of litigation[.]"). The Second Circuit has held that in determining a percentage of the recovery, the Court should calculate the attorney's fees based on the settlement's total value: "[t]he entire Fund, and not some portion

thereof, is created through the efforts of counsel at the instigation of the entire class. An allocation of fees by percentage should therefore be awarded on the basis of the total funds made available, whether claimed or not." *Masters v. Wilhelmina Model Agency, Inc.,* 473 F.3d 423, 437 (2d Cir. 2007).

Courts in this Circuit have found numerous advantages to using the percentage method of awarding fees. First, the percentage method "directly aligns the interests of the class and its counsel" because it provides an incentive to attorneys to resolve a case efficiently and to create the largest total value for the class. *Wal-Mart Stores, Inc.*, 396 F.3d at 122; *In re Lloyd's Am. Tr. Fund Litig.*, 2002 U.S. Dist. LEXIS 22663, at *72 (S.D.N.Y. Nov. 26, 2002) (collecting cases); *In re Polaroid ERISA Litig.*, 2007 U.S. Dist. LEXIS 51983, at *6 (S.D.N.Y. July 19, 2007); *Velez v. Majik Cleaning Serv.*, 2007 U.S. Dist. LEXIS 46223, at *24 (S.D.N.Y. June 22, 2007).

Second, this method is aligned with market practices, as it "mimics the compensation system actually used by individual clients to compensate their attorneys." *In re Sumitomo Copper Litig.,* 74 F. Supp. 2d 393, 397 (S.D.N.Y. 1999); *see also  Sewell v. Bovis Lend Lease LMB, Inc.*, 2012 U.S. Dist. LEXIS 53556, at *29 (S.D.N.Y. Apr. 16, 2012) (opining "[the percentage] method is similar to private practice where counsel operates on a contingency fee, negotiating a reasonable percentage of any fee ultimately awarded."); *Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*, 258 F. Supp. 2d 254, 262 (S.D.N.Y. 2003) (noting the percentage method "is consistent with and, indeed, is intended to mirror, practice in the private marketplace where contingent fee attorneys typically negotiate percentage fee arrangements with their clients.").

Third, the percentage method promotes efficiency and early resolution, as it eliminates any incentive plaintiffs' lawyers may have to run up billable hours—one of the most significant downsides to using the lodestar approach. *Savoie v. Merchants Bank*, 166 F.3d 456, 460-61 (2d

Cir. 1999) ("It has been noted that once the fee is set as a percentage of the fund, the plaintiffs' lawyers have no incentive to run up the number of billable hours for which they would be compensated under the lodestar method"); *see also Goldberger v. Integrated Res. Inc.*, 209 F.3d 43, 48-49 (2d Cir. 2000) (citing *In re Union Carbide Corp., Consumer Prods. Bus. Sec. Litig.*, 724 F. Supp. 160, 167-168 (S.D.N.Y. 1989)).

Finally, the percentage method preserves judicial resources because it relieves the "cumbersome, enervating, and often surrealistic process of evaluating fee petitions." *Savoie*, 166 F.3d at 461 n.4 (quoting *Third Circuit Task Force*, 108 F.R.D. 237, 258). The "primary source of dissatisfaction [with the lodestar method] was that it resurrected the ghost of Ebenezer Scrooge, compelling district courts to engage in a gimlet-eyed review of line-item fee audits." *Goldberger*, 209 F.3d at 48-49; *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, 2007 U.S. Dist. LEXIS 57918, at *46 (S.D.N.Y. July 27, 2007). As one New York court stated:

> The percentage method is bereft of the largely judgmental and time-wasting computations of lodestars and multipliers. These latter computations, no matter how conscientious, often seem to take on the character of so much Mumbo Jumbo. They do not guarantee a more fair result or a more expeditious litigation.

*In re Union Carbide*, 724 F. Supp. at 170.

While courts still use the lodestar method as a "cross check" when applying the percentage of the fund method, courts are not required to scrutinize the fee records as rigorously. *Goldberger*, 209 F.3d at 50; *see In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 468 (S.D.N.Y. 2004) (using an "implied lodestar" for the lodestar cross check, and noting that when used as a cross-check, the reasonableness of the claimed lodestar can be tested by the court's familiarity with the case).

Regardless of whether the percentage of the fund or lodestar method is used, courts in the Second Circuit evaluating the reasonableness of a fee request consider: "(1) the time and labor

expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation . . .; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations." *Goldberger*, 209 F.3d at 50. Class Counsel respectfully submit that the Court should apply the percentage of the fund method here and, under the *Goldberger* factors, the fee and expense request is reasonable and appropriate and warrants approval by the Court.

## V.    ARGUMENT

### A.    Class Counsel's Fee Request Should Be Granted

The Fee Request will compensate Class Counsel for their investment of time, expertise, and capital, which produced an extraordinarily successful outcome for the Settlement Class in a case that was novel, complex, and high risk. *See Velez*, 2010 U.S. Dist. LEXIS 125945, at *58 ("The federal courts have established that a standard fee in complex class action cases like this one, where plaintiffs' counsel have achieved a good recovery for the class, ranges from 20 to 50 percent of the gross settlement benefit."). Each of the six *Goldberger* factors weigh in favor of granting Class Counsel's request for attorneys' fees of 33.33% of the Settlement Fund.

#### i.    The Time and Labor Expended

The litigation required extensive time and labor by Class Counsel. The Declaration submitted by Class Counsel shows a total of 226.9 hours spent on the litigation. Resch Supp. Decl. ¶¶5-6; Doc. 66 ¶¶19-20.

**<u>Strauss Borrelli</u>**

| Timekeeper | Rate | Hours | Total |
|---|---|---|---|
| Samuel J. Strauss (Partner) | $700.00 | 23.4 | $16,380.00 |
| Raina C. Borrelli (Partner) | $700.00 | 57.7 | $40,390.00 |
| Brittany Resch (Partner) | $575.00 | 58.2 | $33,465.00 |
| Alex Phillips (Partner) | $575.00 | 1.0 | $575.00 |

| | | | |
|---|---|---|---|
| Michael Oellerich (Associate) | $450.00 | 2.5 | $1,125.00 |
| Zog Begolli (Associate) | $425.00 | 8.0 | $3,400.00 |
| Carolyn Chen (Associate) | $400.00 | 13.5 | $5,400.00 |
| Andrew Gunem (Associate) | $400.00 | 38.8 | $15,520.00 |
| Rachel Pollack (Paralegal) | $225.00 | 0.3 | $67.50 |
| Amber Heidenreich (Law Clerk) | $150.00 | 9.1 | $1,365.00 |
| Lizzy Adell (Legal Assistant) | $150.00 | 1.0 | $150.00 |
| Rudis Requeno (Legal Assistant) | $150.00 | 11.5 | $1,725.00 |
| **TOTAL** | | **225** | **$119,562.50** |

**Weitz & Luxenberg**

| Timekeeper | Rate | Hours | Total |
|---|---|---|---|
| James Bilsborrow (Partner) | $695.00 | **1.9** | **$1,042.50** |

This number is not surprising given the breadth and scope of the litigation and fully supports the requested fee.

Class Counsel researched and drafted three class action complaints in this matter, in conjunction with information provided by each of the Plaintiffs. When Defendant moved to dismiss Plaintiffs' first amended complaint and cited extrinsic evidence, Plaintiffs filed a motion for jurisdictional discovery, which stayed the pending motion to dismiss. S.A. ¶3. While the motion for discovery was fully briefed and pending, Plaintiff sought leave to file a second amended complaint, which Baldor opposed. *Id*. ¶4. Finally, after Baldor again moved to dismiss the second amended complaint, Plaintiffs opposed that motion. *Id*. The Court denied in part and granted in part the motion to dismiss and set the parties to work on a discovery plan immediately. Finally, after months of engaging in arms'-length settlement negotiations, and drafting and agreeing to a term sheet, and drafting and finalizing a settlement agreement and its exhibits, Plaintiffs' prepared and filed Plaintiffs' unopposed Motion and Memorandum of Law in Support of Preliminary Approval of the Settlement, as well as supplemental briefing; and worked with the Settlement

Administrator and Defendant's counsel to effectuate notice, as well as a supplemental notice, and administer the Settlement. Doc. 66 ¶¶2-10. Plaintiffs have now moved for fees, costs, and awards twice.

A lodestar crosscheck also supports the requested fee. As noted above, the lodestar fee calculation method has "fallen out of favor particularly because it encourages bill-padding and discourages early settlements." *In re Colgate-Palmolive Co. ERISA Litig*., 36 F. Supp. 3d 344, 353 (S.D.N.Y. 2014). Accordingly, the lodestar method is used in this Circuit only "as a sanity check to ensure that an otherwise reasonable percentage fee would not lead to a windfall." *Id*. "[W]here used as a mere cross-check, the hours documented by counsel need not be exhaustively scrutinized by the district court." *Goldberger*, 209 F.3d at 50. Instead, the reasonableness of the claimed lodestar can be tested by the court's familiarity with the case (as well as encouraged by the strictures of Rule 11)." *Silberblatt v. Morgan Stanley*, 524 F. Supp. 2d 425, 434 (S.D.N.Y. Nov. 19, 2007) (internal citations omitted). Class Counsel need only submit documentation appropriate to meet the burden establishing an entitlement to an award, not to satisfy "green-eyeshade accountants." *Fox v. Vice*, 563 U.S. 826, 838 (2011).

The total lodestar to date equals $120,605.00. Resch Supp. Decl. ¶¶5-6; Doc. 66 ¶19. Class Counsel have calculated that their total lodestar yields a multiplier of 1.5**,** which is well within the range accepted by courts in the Second Circuit. *See id*. In fact, courts in this jurisdiction regularly award lodestar multipliers of two times the lodestar or higher. *See, e.g., James v. China Grill Mgmt.*, 2019 U.S. Dist. LEXIS 72759, at *8 (S.D.N.Y. Apr. 30, 2019) (collecting cases with multipliers between 2 and 4.9); *Sewell***Error! Bookmark not defined.***,* 2012 U.S. Dist. LEXIS 53556, at *38 ("Courts commonly award lodestar multipliers between two to six."); *In re Lloyd's Am. Trust Fund Litig,* 2002 U.S. Dist. LEXIS 22663, at *81 (a "multiplier of 2.09 is at the lower

end of the range of multipliers awarded by courts within the Second Circuit"). Also, the lodestar multiplier will ultimately be much lower once final approval is obtained. Resch Supp. Decl. ¶7; Doc. 66 ¶11.

### ii.    The Magnitude and Complexity of the Litigation

"The size and difficulty of the issues in a case are significant factors to be considered in making a fee award." *Beckman v. KeyBank, N.A.,* 293 F.R.D. 467, 481-83 (S.D.N.Y. 2013) (citation omitted). In cases that require more expertise, a larger percentage of the fund should be awarded to the lawyers who can competently prosecute the case. *See In re Citigroup Inc. Bond Litig.*, 988 F. Supp. 2d 371, 379 (S.D.N.Y. 2013) ("The upshot is that the magnitude and complexity of the litigation also weigh in favor of a significant award."). This matter is no exception, as courts recognize that data breach cases enhance the risk litigants face in class litigation. *Hashemi v. Bosley, Inc.*, No. CV 21-946 PSG (RAOx), 2022 U.S. Dist. LEXIS 119454, at *18-19 (C.D. Cal. Feb. 22, 2022) ("Moreover, these risks are compounded by the fact that data breach class actions are a relatively new type of litigation and that damages methodologies in data breach cases are largely untested and have yet to be presented to a jury").

Class Counsel knew from their initial investigation that this litigation would involve extensive research on challenging and complex legal and factual claims in this unique data security class action. Data security and data breach cases across the country are presenting novel issues to the courts for consideration. Class Counsel was also aware that pursuing this case beyond settlement would likely be lengthy and expensive, requiring discovery, briefing, argument, trial, and potential appeals. Doc. 66 ¶¶13-16. All of this would require hundreds, or perhaps thousands, of hours of work, which would result in significant costs. Ultimately, Class Counsel accrued 226.9 hours litigating the matter up to this point, though there is more work to do, including preparing

for and appearing at the Final Approval Hearing, overseeing claims administration, and resolving any appeals.

The magnitude and complexity of the litigation were significant; this factor weighs in favor of granting Plaintiffs' Motion.

### iii.    The Risk of Litigation

Class Counsel undertook significant risk in accepting this case on an entirely contingent basis, supporting the requested fee award. The Second Circuit "has identified the risk of success as perhaps the foremost factor to be considered in determining" reasonable attorneys' fees. *In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 467 (S.D.N.Y. 2004); *see also In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 592 (S.D.N.Y. 2008) ("Courts have repeatedly recognized 'that the risk of the litigation' is a pivotal factor in assessing the appropriate attorneys' fees to award plaintiffs' counsel in class actions.") (citation omitted). Class Counsel here took on the risks of litigation knowing full well their efforts might not bear fruit. Fees were not guaranteed. This case involved complexities of data breach that are novel and evolving, and the risk of non-payment is especially high in class actions with contingent fee arrangements, like here. *See Teachers' Ret. Sys. v. A.C.L.N., Ltd.*, No. 01-CV-11814(MP), 2004 U.S. Dist. LEXIS 8608, at *11 (S.D.N.Y. May 14, 2004) ("Little about litigation is risk-free, and class actions confront even more substantial risks than other forms of litigation.").

"It is well-established that litigation risk must be measured as of when the case is filed." *Goldberger*, 209 F.3d at 55. While Plaintiffs are confident that their claims would prevail, they faced several strong legal defenses and difficulties in demonstrating causation and injury. And at the time of filing of this Action, there were complex issues of fact and law, which presented significant risks that continue through today. In particular, the claims asserted herein have been

met with strong opposition in courts nationwide. Due at least in part to their cutting-edge nature and the rapidly evolving law, data security cases like this one generally face substantial hurdles— even just to make it past the pleading stage. *See Hammond v. Bank of N.Y. Mellon Corp.*, 2010 U.S. Dist. LEXIS 71996, at *4 (S.D.N.Y. June 25, 2010) (collecting data breach cases dismissed at the Rule 12(b)(6) or Rule 56 stage). In addition, there is always a risk that Defendant would successfully oppose class certification. *See Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 186 (W.D.N.Y. 2005) (noting that "[w]hile plaintiffs might indeed prevail [on a motion for class certification], the risk that the case might be not certified is not illusory"). Even if the Class was certified by the Court, Defendant could have then attempted to appeal the certification decision under Federal Rule of Civil Procedure 23(f) or argued for decertification as the litigation progressed. *See Chatelain v. Prudential-Bache Sec.*, 805 F. Supp. 209, 214 (S.D.N.Y. 1992). Such defenses, if successful, could drastically decrease or eliminate any recovery for Plaintiffs and Settlement Class Members.

"Counsel should be rewarded for undertaking [those risks] and for achieving substantial value for the class." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 991 F. Supp. 2d 437, 441 (E.D.N.Y. 2014); *see also Jermyn v. Best Buy Stores, L.P.*, No. 08 Civ. 214 CM, 2012 WL 2505644, at *10 (S.D.N.Y. June 27, 2012) ("[T]he risk of non-payment in cases prosecuted on a contingency basis where claims are not successful…can justify higher fees.").

Class Counsel was able to secure a significant settlement on behalf of Settlement Class Members for complex claims asserted against the Defendant. This was done despite the significant risks Plaintiffs faced in pursuing these claims. As such, the Settlement is a direct result of Class Counsel's skills and dedication in this Action. Accordingly, this factor weighs in favor of approving the requested fee.

### iv.    The Quality of Representation

In determining the quality of representation, courts examine the experience of the attorneys involved and the result obtained in the lawsuit. *See Taft v. Ackermans*, 2007 U.S. Dist. LEXIS 9144, at *31 (S.D.N.Y. Jan. 31, 2007). Here, Class Counsel has substantial experience in both class actions generally, and complex consumer class actions involving cybersecurity incidents in particular. *See* Borrelli Decl.; Doc. 66-1 (Firm resume). With this knowledge, Class Counsel was able to evaluate the risks and benefits of continued litigation and determine the scope of a fair and reasonable settlement of Plaintiffs' and the Class's claims, resulting in this Settlement that provides significant benefits to the Settlement Class.

With respect to the results achieved for the Settlement Class, as discussed above, they are significant and directly address the harms claimed in this action. Defendant has agreed to establish a $550,000 Common Fund to provide benefits to the Settlement Class, including reimbursement for economic losses and lost time, or for a $100 pro rata cash payment. S.A. ¶64. The Settlement also provides the option to enroll in credit monitoring. *Id.*

Given the quality of Class Counsel's representation, as evidenced by the excellent Settlement achieved for the Settlement Class, this factor weighs in favor of approval.

### v.    The Requested Fee in Relation to the Settlement

Class Counsel request an award of attorneys' fees of 33.33% of the $550,000 Common Fund, or $183,333.33. This is consistent with the range typically awarded by courts in this Circuit. *See, e.g., Warren v. Xerox Corp.*, No. 01-CV-2909 (JG), 2008 U.S. Dist. LEXIS 73951, at *22 (E.D.N.Y. Sep. 19, 2008) (awarding class counsel attorneys' fees and expenses at 33.33 percent of the total settlement value, and finding such a sum "comparable to sums allowed in other cases"); *Lowe v. NBT Bank*, No. 3:19-CV-1400 (MAD/ML), 2022 U.S. Dist. LEXIS 180182, at *30-31

(N.D.N.Y. Sep. 30, 2022) (bank fee class action with $4.2 million common fund, collecting cases where 33% of the settlement fund was awarded); *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 249 (2d Cir. 2007) (affirming fee award of 30% of recovery); *In re Gilat Satellite Networks, Ltd.*, No. CV-02-1510 (CPS)(SMG), 2007 U.S. Dist. LEXIS 68964, at *50 n.41 (E.D.N.Y. Sep. 18, 2007) (30% fee). Additionally, when considering the value offered to the Settlement Class by the credit monitoring benefit, which would cost at least $239.88 per year per person at retail cost[3], Plaintiffs' fee request is certainly reasonable in light of the significant benefits achieved on behalf of the Class.

### vi.    Public Policy Considerations

Public policy supports providing attorneys' fees in class action cases, as class actions are also an invaluable safeguard of public rights. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985). Where, as here, the settlement amount is relatively small, an award of attorneys' fees ensures that "plaintiffs' claims [will] likely . . . be heard." *Frank v. Eastman Kodak Co*., 228 F.R.D. 174, 189 (W.D.N.Y. 2005). If courts denied sufficient attorneys' fees "no attorneys . . . would likely be willing to take on . . . small-scale class actions[.]" *Id.*; *see also Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 374 (S.D.N.Y. 2002) (private attorneys "should be encouraged" to take the risks required to represent those who would not otherwise be protected from socially undesirable activities, including fraud.). Public policy is in favor of rewarding counsel who persevere through risky litigation and achieve favorable results for the class they represent. Here, Class counsel took on this case despite the uncertainty and volatility of law pertaining to consumer class actions, especially ones seeking damages for personal injury and economic loss for data breach victims

---

[3] Class members will receive Identity Defense Total from CyEx by Pango Group. https://cyex.com/identity-defense/

and persevered in obtaining a settlement allowing for Settlement Class Members to receive cash, injunctive, and mitigative compensation. Such a result should be rewarded.

### vii.    Fee Request in Comparison to Similar Settlements

In addition to the *Goldberger* factors, which Plaintiffs analyzed in detail above, this Court considers a "baseline reasonable fee with reference to other common fund settlements of a similar size and complexity, based on the subject matter of the claims." *City of Birmingham Ret. & Relief Sys. v. Credit Suisse Grp. AG*, 2020 U.S. Dist. LEXIS 237595, at *5 (S.D.N.Y. Dec. 17, 2020). In general, federal courts in New York commonly award attorneys' fees of 30-33% of the common fund in similarly sized cases. *See Cohan v. Columbia Sussex Mgmt., LLC*, No. CV 12-3203 (AKT), 2018 U.S. Dist. LEXIS 170192, at *15-16 (E.D.N.Y. Sep. 28, 2018) (granting request for attorneys' fees of 30% of a $980,663.99 common fund in a FLSA case that involved significant work and complex issues of law, like this action); *Reyes v. City of Rye*, 2017 U.S. Dist. LEXIS 103096, at *20 (S.D.N.Y. June 30, 2017) (granting class counsel's fee request for one-third of the $984,964 common fund, and finding that the request was "reasonable and consistent with the norms of class litigation in this circuit.") (citing cases) (internal quotation marks omitted). Empirical studies confirm this benchmark. *See* Brian T. Fitzpatrick, *An Empirical Study of Class Action Settlements and Their Fee Award*, 7 J. Empirical Legal Stud. 811, 838 (analyzing nearly 700 common fund settlements from 2006 and 2007 and finding that the median percentage of the settlement fund awarded in cases with similarly sized funds is 30%); *Grice v. Pepsi Bevs. Co.*, 363 F. Supp. 3d 401, 407 (S.D.N.Y. 2019) (citing Theodore Eisenberg et al., *Attorneys' Fees in Class Actions: 2009-2013*, 92 N.Y.U. L. Rev. 937, 952 (2018), which found the median fee in FCRA cases (which are similar to data breach cases) is approximately 29%).

Fee awards from comparable data breach settlements around the country confirm the reasonableness of Plaintiffs' fee request. *See Flores v. Don Roberto Jewelers, Inc.*, No, 30-2021-01212035-CU-NP-CXC (Cal. Sup. Ct., Orange Cty. July 20, 2023) (awarding $1,312,890.96 in attorney's fees from a $4 million fund (32.8%)); *Culbertson et al v. Deloitte Consulting LLP*, No. 1:20-cv-03962-LJL (S.D.N.Y. Feb. 16, 2022) ("The Court hereby awards $1,649,835.00 in attorneys fees (33.33% of the Settlement Fund) to Class Counsel."); *Henderson V. Kalispell Regional Healthcare*, No. CDV 19-0761 (Montana Eighth Judicial District Court, Cascade County) (court awarded attorneys fee of 33% of the common fund of $4.2 million).

Given the applicable 30-33% benchmark, the court then considers whether a "sliding scale" approach is appropriate based on the size of the settlement fund to "avoid[] a windfall to plaintiffs' counsel to the detriment of class members." *City of Birmingham*, 2020 U.S. Dist. LEXIS 237595, at *8. This is not a "megafund" settlement where, given the size of the settlement, it is necessary to decrease the benchmark to avoid attorneys' fees that are outsized in comparison to the benefits to the Settlement Class. *See Precision Assocs. v. Panalpina World Transp., Ltd.*, No. 08-cv-42 (JG) (VVP), 2013 U.S. Dist. LEXIS 121795, at *61 (E.D.N.Y. Aug. 27, 2013) ("in megafund cases particularly, courts have "traditionally accounted for these economies of scale by awarding fees in the lower range[s]." ) (citations omitted); *In re Air Cargo Shipping Servs. Antitrust Litig.*, No. 06-MD-1775 (JG) (VVP), 2009 U.S. Dist. LEXIS 88404, at *86 (E.D.N.Y. Sep. 25, 2009) (same); *In re NASDAQ Mkt.-Makers Antitrust Litig.*, 187 F.R.D. 465, 486 (S.D.N.Y. 1998). Rather, this case involves a modest $550,000 common fund on behalf of a relatively small class of approximately 13,382 individuals. Plaintiffs' requested fee will not diminish that amount in any way, and thus there will be no detriment to Settlement Class Members.

20

Additionally, the court considers "whether the magnitude and complexity of this case warrants a departure from the lower range typically seen in similar cases." *City of Birmingham*, 2020 U.S. Dist. LEXIS 237595, at *9. Because Plaintiffs do not seek a departure from the appropriate benchmark of 30-33%, this factor is neutral. However, to the extent the Court does consider this factor, as discussed above, data breach cases are both complex and risky, and supports the requested fee.

### B.    Class Counsel's Requested Expenses are Reasonable

Courts typically allow counsel to recover their reasonable out-of-pocket expenses. *Beckman v. KeyBank, N.A.,* 293 F.R.D. 467, 481-83 (S.D.N.Y. 2013) (citing *In re Indep. Energy Holdings PLC Sec. Litig.,* 302 F. Supp. 2d 180, 183 n. 3 (S.D.N.Y.2003)). "Attorneys may be compensated for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they were 'incidental and necessary to the representation' of those clients." *In re Indep. Energy Holdings PLC Sec. Litig*., 302 F. Supp. 2d at 183 n.3 (internal quotation marks omitted).

Settlement Class Counsel seek reimbursement of costs and expenses totaling $3,832.03. Resch Supp. Decl. ¶9; Doc. 66 ¶23.

| Category | Billable ($) |
|---|---|
| Filing Fees | $855.15 |
| Legal Research | $172.84 |
| Postage | $187.33 |
| Overnight Delivery | $37.76 |
| Travel | $2,578.95 |
| **TOTAL** | **$3,832.03** |

These expenses are expenses routinely charged to hourly clients, are appropriately documented, and were necessary and reasonable to prosecute the litigation. The full requested amount should be awarded.

**C.    Plaintiffs' Requested Service Award is Justified and Should be Approved**

Service awards are commonly awarded in class action cases to compensate plaintiffs for the time and effort they expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained. *Beckman v. KeyBank, N.A.,* 293 F.R.D. 467, 481-83 (S.D.N.Y. 2013) (citation omitted). Courts consider such compensation important. *See Massiah v. MetroPlus Health Plan, Inc.,* No. 11 Civ. 5669, 2012 WL 5874655, at *8 (E.D.N.Y. Nov. 20, 2012).

For their commitment to this case, Plaintiffs seek $5,000 each, or $15,000 total. All Plaintiffs assisted in preparing the complaints in this matter by providing facts and documents regarding their experiences as someone impacted by the Data Incident. Doc. 66 ¶3; Declaration of Eduardo Antonio Jimenez Del Rosario (Doc. 67); Declaration of Jayson Mercado (Doc. 68); Declaration of Taneisha Lewis (Doc. 69). Plaintiffs remained in contact with Class Counsel after the filing of each complaint regarding the progress of the case. *Id.* Plaintiffs provided information in advance of mediation and were available throughout the mediation and settlement process to answer questions and represent the interests of the Settlement Class. *Id.* They were prepared to take on the responsibilities of a class representative, including being deposed and testifying at trial. *Id.*

The amount requested is reasonable and modest relative to awards regularly granted by courts in this jurisdiction and the request should be granted. *See Beckman*, 293 F.R.D. at 481-83 (granting an award of $5,000 to $7,500 to plaintiffs); *Dornberger v. Metropolitan Life Ins. Co*., 203 F.R.D. 118 (S.D.N.Y. 2001) (noting in class actions representative plaintiff awards for $2,500 or more are commonly accepted).

## VI.   CONCLUSION

For the foregoing reasons, Class Counsel request that the Court grant this motion and (1) award 33.33% of the Common Fund, or $183,333.33 as attorneys' fees, along with $3,832.03 in expenses and (2) approve a service award of $5,000 for each of the three Plaintiffs.

Dated: August 6, 2024

By: */s/ Brittany Resch*
Brittany Resch (*pro hac vice*)
Raina C. Borrelli (*pro hac vice*)
STRAUSS BORRELLI PLLC
One Magnificent Mile
980 N. Michigan Avenue, Suite 1610
Chicago IL, 60611
Telephone: (872) 263-1100
Facsimile: (872) 263-1109
bresch@straussborrelli.com
raina@straussborrelli.com

James J. Bilsborrow (NY Bar # 519903)
WEITZ & LUXENBERG, PC
700 Broadway
New York, NY  10003
Telephone: (212) 558-5500
jbilsborrow@weitzlux.com

*Attorneys for Plaintiff and the Proposed Class*

## <u>CERTIFICATE OF SERVICE</u>

I, Brittany Resch, hereby certify that on August 6, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel of record, below, via the ECF system.

DATED this 6th day of August, 2024.

STRAUSS BORRELLI PLLC

By: */s/ Brittany Resch*
    Brittany Resch
    STRAUSS BORRELLI PLLC
    One Magnificent Mile
    980 N. Michigan Avenue, Suite 1610
    Chicago IL, 60611
    Telephone: (872) 263-1100
    Facsimile: (872) 263-1109
    bresch@straussborrelli.com